JACKSON, *ex dem.* BLANCHARD, *against* ALLEN.

*B owned an alley 24 feet wide, between two lots, one owned by A, and the other by H.*

EJECTMENT, for a small lot or *alley*, in the village of *Salem*, *Washington* county, tried before (the late) Mr. Justice *Yates*, at the *Washington* Circuit, *June* 10th, 1822.

*A* built a large brick house on his lot, which extended 12 feet across the alley at one end, and *B* built a fence lengthwise of the alley, on a line corresponding with *A's* house, so as to narrow the whole alley one half or more, which alley, thus narrowed, *B* used as a way. Then *B* gave a lease in fee to *A*, of the whole 24 feet, describing it as a lot on which *A's* house partly stood, at a rent of $15, reserving a way through the alley for himself, his teams, carts, &c.; and the lease was declared to be upon condition that *A* should leave *B* in the unobstructed enjoyment of the way. *Held*, that a continuance of the fence, as *B* had himself made it, was not an obstruction of the way, within the words of the condition; that a reasonable way, for the purposes expressed, was all that *B* could exact; and that his acts, in making the fence, and leasing with the house partly across the alley, were facts from which a jury would be bound to consider the alley- as it was narrowed by the house and fence, the full extent of the way intended by the parties to be reserved; the lessee having a right to reduce all the residue of the alley to his exclusive possession.

The words, " and these presents are upon this condition," viz. *that the lessee shall suffer the lessor to enjoy a way reserved, through the demised premises, without obstruction*, are sufficient, in a durable lease, to make the estate a conditional one, without an express clause of re-entry ; and if the way be obstructed, ejectment lies.

The declaration was entitled of *Thursday, May 4th,* in *May* term, 1820, and the ouster laid on the 3d *May,* 1820.

On the trial, *James Rowan* testified, that the *alley* was laid out by *John Williams,* the proprietor of that and the adjoining lands, as early as 1796. In that year he sold the lot adjoining the alley on the north, to *Becker,* who then took possession of, and sold it to *Crookshank,* who sold it to the defendant, who occupied it ever since. The alley runs from the road east, to the rear of the lots. Several years ago the defendant built a barn on the rear of his lot. In 1806, he built a large brick house on the west end of his lot, adjoining the highway. The lot adjoining the alley on the south was sold by *Williams* to *Peebles,* who built upon it, and in 1800, *Hawley* built a barn in the rear of that lot, he then owning it.

The plaintiff then gave in evidence a lease in fee from *Blanchard,* (the lessor of the plaintiff) to *Allen,* (the defendant) dated *Dec.* 13, 1809, by which *Blanchard granted, bargained, sold, aliened, remised, released and confirmed* to *Allen,* his heirs, &c. the *alley,* by the description of "all that lot, &c. situate, &c. beginning at the N. W. corner of the lot lately belonging to *Hawley,* &c. then northerly to the S. W. corner of the lot heretofore granted to *Allen,* (the lessee) by *Crookshank,* 24 feet; thence easterly, along the S. side of the same lot, to the S. E. corner thereof; thence S. to the N. E. corner of the barn now in the occupation of *Robert M'Murray, junior,* and standing on the land of *Blanchard,* (the lessor); thence westerly, along the N. side of the said barn, to the north corner thereof; thence southerly, to the said lot formerly of the said *Hawley;* thence westerly, along the N. side of the same lot, to the place of beginning, part of the dwelling house of the said *Allen,* (the lessee) standing on part of the west end of said lot hereby granted—*Excepting and reserving* in and out of the said

---

To make a receipt for rent operate as a waiver of a forfeiture of the estate demised, the rent must not only be *received* after the forfeiture is incurred, but such rent so received must have *accrued* after that time.

And this validates the lease only to the time when the rent so received accrued; but will not operate as a waiver of a forfeiture incurred by continuing the original cause of the forfeiture after the day on which the rent received fell due.

granted lot, &c. to the said *Blanchard*, his heirs and assigns, a right of way, as well a foot way as a horseway, and a way for his and their carts, carriages and servants, in, out and through the granted lot, at all times ;" and reserving a yearly rent of $15, payable the 30th *December*, in every year, forever, &c. with the usual clause of distress and re-entry, if the rent should be in arrear for 20 days. Then came this clause : " And these presents are upon this condition ; that the said *Allen*, his heirs, &c. shall and do at all times, forever hereafter, permit and suffer the said *Blanchard*, his heirs, &c. to have, use and enjoy the right of way above mentioned, without any obstruction or let whatsoever; but nothing herein contained shall extend to prevent the said *Allen*, his heirs, &c. erecting a gate or gates on the west part of said granted lot, subject to be opened by the said *Blanchard*, his heirs, &c. at their discretion." Then followed the usual covenant for quiet enjoyment, he, the lessee, fulfilling the covenants on his part, &c.

The lessor then admitted, that in *September*, 1820, the defendant paid the rent which fell due on the 30th *December*, 1819.

*Jonathan Morey* then testified, that he surveyed the alley ; that it was originally 24 feet wide, and extended from the road to the lessor's land on the east ; that about 12 feet of the south end of the defendant's brick house stands on the alley ; that the defendant has enclosed in his garden, by a permanent fence, all the alley, except a strip 9½ feet wide, on the north side of the alley, and the part so enclosed is occupied by the defendant, as a garden ; that there is a gate near the west end of the alley, on the south side of the defendant's house. On the south side, the alley is 181½ feet long. *Joseph Cooper* testified, that the garden fence now stands where it did in *April*, 1820. *Thaddeus Smith* testified, that a part of the alley was enclosed, and occupied as a garden, in 1807, and so continued to the present time ; that the part of the alley left open is of sufficient width to allow a waggon or carriage to pass with safety, but not wide enough for two waggons to pass each other, if they should meet. *Archibald M'Athelie* testified, that in the autumn of 1819,

the refuse of the alley was piled up at the east end of it, with the manure which was thrown from the shed adjoining the alley. This manure continued there till the spring of 1820, when it was drawn away by the defendant. That part of the alley next to and adjoining the defendant's barn, was usually occupied by the defendant's cows in the winter, and his cows were generally fed there. In one instance there had been wood thrown into the alley by the defendant, but it did not obstruct the passage to the back part of the alley, and it was soon cut up and piled away. *George Coggswell* testified, that in *April*, 1820, he was sent by the lessor to ask the defendant to remove the manure which was there piled up at the east end of the alley ; that there was a rack standing on the manure, from which the cattle ate their fodder ; that the rack was lengthwise the alley. The defendant said the manure was so frozen he could not then remove it. The lessor's barn stands on the south side, and at the east end of the alley, where a gate opens to the lessor's land. The door of the lessor's barn opens on the north side of his barn, into the alley ; the rack stood within about 4 feet of the door of the lessor's barn ; and the manure was piled up two or three feet high against the lessor's barn door, so that the witness could not open it during the month of *April*, 1820. At another time, this witness went with a team of horses to go through the alley, when the defendant told him he could not get through, which he found to be true, the rack being frozen down on a pile of manure ; and if the rack had been removed, it would have been impossible to have driven a loaded cart or waggon over the manure, without upsetting ; that the alley, at the east end, is only about 12 feet wide. *Lyman Gleason* testified, that in the latter part of *April*, 1820, he was employed by the defendant to clear out the manure and filth from the alley ; that cattle appeared to have been fed there, the manure being scattered pretty much over that part of the alley which was occupied as a pass way to the rear of the lot. There was also a pile of manure near the gate, at the east end of the alley, over which they passed with the waggons when drawing the manure. The rack which stood upon it was removed, by one man's taking hold

UTICA,
Aug. 1824.

Jackson
v.
Allen.

of one end of it, and one other hold of the other end, and setting it against the side of the barn, out of the way. The pile of manure was about in the centre of the alley, but did not extend south to the barn of the lessor ; that the snow had drifted against the barn door, which prevented its opening, but the manure formed no impediment, and was not within 8 feet of the door. The witness scraped up the manure, and found that it did not extend either to the gate or the barn upon the south. The manure from the defendant's stable was thrown into the garden, and not into the alley. The pile appeared to have been scraped up the fall before, from what had accumulated in the alley the previous summer. *John Smart* testified, that he assisted *Gleason* in removing the manure, but did not come till the 2d day. He could not drive a loaded waggon over the manure, through the alley, into the lessor's lot, but thinks an empty waggon might have been driven over it. When he drove in his waggon to get out the manure, he was obliged to take his horses from the waggon, and turn it round by hand. *Isaac Powers* testified, that he saw the pile of manure, drove his waggon with a load of hay to the defendant's barn, and unloaded it, but could not turn round in the alley. He opened the gate at the east end, drove through on to the lessor's land, turned round, and then drove his waggon empty back through the alley. A loaded waggon could not have been driven over it with safety. *Russell Bassett* testified, that he saw the pile of manure, about half way between the defendant's barn and the lessor's. He went in with a load of hay, and drove round the pile of manure with ease. He saw the rack, and thinks it formed no obstruction. Thinks there might have been 3 or 4 loads of manure in the pile.

The defendant then moved for a nonsuit—

1. Because, if there was any obstruction, the lessor's only remedy was by a personal action. The lease was not forfeited.

2. That if the defendant left unobstructed a straight way from one end of the alley to the other, of the same width as that part which adjoined to, and was not covered by the house, it was all the lessor had a right to claim.

3. That the defendant had a right to enclose and cultivate all the alley, except a convenient and sufficient way over it for the lessor's use.

4. That the obstruction formed by the house and fence, including a part of the alley in the garden, being upon the alley at the time the lease was given, was to be received as evidence of the acquiescence and consent of the lessor to their continuance, and that for them no forfeiture could exist.

5. That the obstruction having existed previous to the rent's becoming due, in 1819, the lessor's receiving that rent was a waiver of the forfeiture, if any had accrued.

The Judge decided, that an obstruction of the lessor's right of way over any part of the demised premises, would be a forfeiture of the estate ; that this was a question of law, which, however, depended upon the fact of such obstruction ; and he charged the jury, that if they believed, from the testimony, that a part of the alley, as described by the witnesses, was, between the 30th December, 1819, and the 3d of May, 1820, enclosed by a fence in the defendant's garden, and appropriated to his exclusive use, and the obstruction in the remaining part of the alley rendered the passage, with loaded teams, unsafe and hazardous, the plaintiff would be entitled to recover on the ground of forfeiture ; but that the house, having been mentioned in the lease as standing on the premises, could not constitute an obstruction, within the terms of the lease. The recognition of this fact by the lease, clearly shewed that it was not so considered at the time the lease was executed. The jury gave a verdict for the plaintiff for the alley.

S. Stevens, for the defendant, now moved for a new trial, on the grounds taken at the Circuit.

He added, in relation to the first point, that the words of the lease, " these presents are upon this condition, &c." did not import a forfeiture for the obstruction. To have this effect, the words should be express and explicit ; but the lease contains no plain words of forfeiture, except for the non payment of rent. The plaintiff had a complete rem-

edy by a personal action against the lessee or his assigns. The words which are claimed to warrant a forfeiture are, at least, of doubtful import; and the Court will lean against a harsh construction. Courts always lean against the forfeiture of leases. In *Jackson* v. *Brownson*, (7 *John. Rep.* 235) *Spencer*, J. says, " It is an established principle, that in construing a covenant which is to work a forfeiture, Courts adhere strictly to the precise words of the condition. This rule, for its equity and reasonableness, deserves constantly to be kept in view. It is, in most cases, rigorous and harsh, to break up a lease, for the violation of covenants which may be compensated in damages ; and the present case appears to be one of that description." In that case, the lessee had agreed, expressly, that if the covenants in the lease should be violated, it should operate as a forfeiture.

As to the other points, he remarked, that *Allen* had done no act to work a forfeiture. When he took the lease, at this rent, he certainly had a right to expect some benefit from it, beyond a mere right of way. No casualty should be allowed to work a forfeiture. Some affirmative act should be shown, tending directly to deprive *Blanchard* of a right of way. The condition should be violated in its precise language, before the law will allow the act to operate as a forfeiture. (*Jackson* v. *Brownson*, 7 *John. Rep.* 227, 232, 235. *Jackson* v. *Harrison*, 17 *id.* 66, 70, 71. *Woodf. L. & T.* 203. *Bull. N. P.* 96.)

Here was a waiver of the forfeiture, by receiving rent. (*Woodf. L. & T.* 519. *Cowp.* 247. *Roe* v. *Harrison*, 2 *T. R.* 425. *Doe* v. *Bancks*, 4 *B. & A.* 401.) The last was a strong case to this point. It may be objected, that the receipt here was of rent due before the forfeiture ; but this is true as to only a part of it.

*J. Willard & J. Crary*, contra. The lease having mentioned the fact that part of the alley was covered by the house, we did not insist on a forfeiture for that reason ; but a part was also enclosed by the defendant for the purposes of a garden. This we do insist on as a forfeiture ; and the very circumstance that the lease provides for the house and gate, implies that no other obstruction was admissible. All

others are excluded by this provision. The argument that the garden fence may be continued, because it was there when the lease was given, proves too much. It might as well be said that had all the premises been permanently enclosed at that time, therefore, no way whatever should be allowed to the lessor. The reservation of the way is in strong technical terms, and clearly manifests an intention to reserve all not covered by the house. But suppose its extent was, in some measure, at the discretion of the defendant; here has been a total obstruction. If the testimony was contradictory, it was fairly submitted to the jury, who have found the obstruction.

A clause of re-entry was not necessary to provide for the forfeiture. The lease rested expressly upon the condition that there should be no obstruction; and the condition is well expressed. (2 *Cruis. Dig.* 1, 2. *Co Litt.* 201, *a. id.* 203, *a.*) It is a reasonable condition. The remedy for condition broken is by ejectment. Even an actual entry is not necessary. The confession of lease, entry and ouster, by the consent rule, is enough. (2 *Cruise Dig.* 49. *Adams' Ejectment, Am. ed.* 90. *Jackson* v. *Crysler*, 1 *John. Cas.* 125. *Langendyck et ux.* v. *Burhans*, 11 *John.* 461.)

The acceptance of rent was no waiver of the forfeiture. We received no rent which fell due after the 30th *December*, 1819. Our act supposed the lease good to that time, and has no further effect. The acts of forfeiture complained of were all subsequent. We were restrained in our evidence to the time which intervened between that day and the 3d of *May*, 1820, when the ouster was laid in the declaration. Though the receipt of rent may operate as a confirmation of the estate, it does not discharge the condition. The lessee had the estate free of the forfeiture to the time up to which we received the rent; not after.

The argument that we should have taken our remedy by personal action, we presume, means that we should have brought covenant or case. But there is no covenant against the obstruction. It is guarded against by condition only: and conceding that we might bring case, the same circumstances, which would warrant this action, will authorize an

ejectment for the forfeiture. The whole extent of this alley is less than the statute would allow for a private way ; yet, after being narrowed to 9 feet by permanent erections, it is totally obstructed by the filth, manure and rack. Only one witness says he could pass around it ; and he mentions no time when this was done. All the other witnesses concur in saying there was a total obstruction.

*D. Russell*, in reply. I ask again, was it intended by the parties that *Blanchard* should enjoy a way over this whole alley, and yet receive the 15 dollars' rent ? The testimony shews abundantly that the way left was enough for all ordinary use ; and the occupation and acts of the lessor, before the lease was executed, defined the extent which was necessary. The way has not been altered since the lease. It is now as broad as the lessor himself made it when he had the whole control. The house was then built, and the fence made. Here is a covenant on the part of the lessor, that on the defendant's fulfilling the covenants on his part, he shall enjoy the premises. It is said here is no covenant against obstruction. Be it so. There is then a fulfilment of all our covenants, and, in the very terms of the lease, can be no forfeiture. The lessor can have a remedy by an action on the case alone.

The Judge did not, as supposed on the other side, put the case fairly to the jury. It was decided by him that any, the least obstruction, would be a forfeiture, and taking this for the rule, the verdict was inevitable.

But, in reality, there was no obstruction; nothing to prejudice the lessor. The whole was temporary and casual ; and on being apprized of the lessor's wishes to that effect, every effort was promptly made to remove it ; and it was removed before suit commenced. The reasoning of the Judges in *Senhouse* v. *Christian*,(1 *T. R.* 560) will be found in point upon the question of obstruction.

For the effect of an acceptance of rent, the Court are referred to what Ld. *Mansfield* says in *Jenkins* v. *Church,* (*Cowp.* 482 ;) and *Goodright* v. *Davids*, (*id.* 803.) Also, to what was said in *Fox* v. *Swann*, (*Styles*, 482-3.)

The receipt was of rent accrued after the pretended forfeiture, viz. of rent due 30*th December*, 1819; whereas the obstruction was in piling refuse, &c. the fall before.

*Curia.* per SUTHERLAND, J. I think the Judge erred in charging the jury, that if they believed a part of the alley, as described in the lease, was, between the 30*th* of *December*, 1819, and the 3*d* of *May*, 1820, inclosed by a fence, in the defendant's garden and appropriated to his exclusive use, and the obstruction in the remaining part of the alley rendered the passage with loaded teams unsafe and hazardous, the plaintiff would be entitled to recover on the ground of forfeiture. These two causes of forfeiture should have been separately and distinctly presented to the jury.

The exceptions and condition in the lease did not bind the defendant to leave the whole of the demised premises unoccupied and unimproved; unless the whole was necessary for a convenient way or passage for the horses, carriages, carts, and servants of the lessor. Suppose the premises conveyed had been one hundred, instead of four and twenty feet in width; would it be contended, that the reservation of a right of way extended to each and every part of them, and prohibited the defendant from inclosing any portion? It should have been submitted to the jury, as a matter of fact, whether enough of the alley was left unenclosed to afford a convenient passage for the lessor, and if they were of opinion that there was, then, clearly, the plaintiff would not be entitled to recover on that ground. If the construction contended for by the plaintiff's counsel be correct, the effect of the conveyance was merely to give *to the defendant* a right of way through the alley; for if he could not enclose any portion of it, he could not use it permanently in any other way, without encroaching on the lessor's rights. Now if this had been the understanding and intention of the parties, they would most naturally have carried it directly into effect, by a simple conveyance of a right of way to the defendant.

But again: the fence complained of was on the premises at the time of giving the lease, and had been there several

years before.   It took no more in width from the alley than
was covered by the defendant's house.   These are strong
circumstances which a jury would be authorized, and, I think,
bound to consider equivalent to an admission on the part of
the lessor, that neither the house nor the fence encroached
upon the right of way intended to be reserved by him.   But,
at all events, the question of fact should have been submitted
to the jury.

As to the obstruction *occasioned by the manure*, the ev-
idence was contradictory.   It appears to have been about
the center of the alley.   *Bassett* testified, " that he took a load
of hay to the defendant's barn, and drove round the pile of
manure with ease; and thinks that it formed no obstruction ;"
that there might have been three or four loads of it.   *Pow-
ers* also drove a load of hay to the defendant's barn, and he
thought a loaded waggon could not have been *driven over
the manure* with safety ; but he does not say, that there was
not room to pass round it, and from the diagram it would
appear that he must have gone round it with his load, in order
to get at the defendant's barn.   Other witnesses stated that
loaded teams could not be *driven over the manure* with safe-
ty ; but there is not one who swears that after the rack was
removed, a loaded waggon could not have passed round the
manure without danger or inconvenience.   The jury might
well have come to the conclusion, that the manure did not
so obstruct the alley as to deprive the lessor of a convenient
passage through it.

If the obstruction did amount to a forfeiture, the receipt
of rent by the lessor in *September*, 1820, was not a waiver
of it.   The manure was not removed, until the last of *April*,
1820.   The rent which was received, fell due in *December*,
1819.   In order to render the receipt of rent a waiver, it
is necessary that the rent should *have accrued* as well as have
been received subsequent to the forfeiture.   It proceeds
upon the principle that the lessor, by receiving the rent, af-
firms the lease to *have continuance*, as Ld. *Coke* expresses it ;
but that can only relate to the time when the rent fell due,
and not to the time of its payment ; and so are all the au-
thorities. (*Co. Litt.* 211, b.  *Woodf. L. & T.* 203-4.  *Doe*

v. *Batten, Cowp.* 246, *Aston, J.* *Jenkins* v. *Church, id.* 482. *Goodright* v. *Davids, id.* 803. *Roe* v. *Harrison,* 2 *T. R.* 425. 1 *Saund.* 287 c. n. (16). *Pennant's case,* 3 *Rep.* 64.) The receipt of rent was an affirmance of the lease on the 30*th* of *December,* 1819; but the obstruction still continuing, the subsequent forfeiture has not been waived. The case of *Doe* v. *Bliss,* (4 *Taunt.* 735) is precisely analogous on this point; and the same doctrine is fully sustained by the subsequent case of *Doe* v. *Bancks,* (4 *B. & A.* 401.) The lease was not absolutely void, *but voidable at the option of the lessor upon a breach of the condition.* (*Doe* v. *Bancks,* 4 *B. & A.* 401.) If the lessor, therefore, with a full knowledge of the forfeiture, had accepted rent, which fell due after that event, the cases already cited show that it would have been a waiver.

The lessee had but an estate upon condition, on breach of which, the lessor undoubtedly had a right to re-enter. (*Co. Litt.* 203, *a. et seq. sections* 328-9-30-31.)

But a new trial must be granted, for the misdirection of the Judge, the costs to abide the event.

New trial granted.