## NORRIS v. MORRILL.

Whatever terms may be used by a landlord to his tenant, there will be no demand of the rent, if it is understood by the parties that no demand is intended, or if the landlord intends none.

A demand of rent may be waived expressly or by the mutual consent of the parties.'

After such a demand, long delay to give notice to quit, payment and reception of rent, and the treatment of the tenancy as existing in all respects as before the demand, by the parties, will be competent evidence of such an understanding.

Where a notice has been given sufficient to terminate a tenancy, the mere reception by the landlord, afterward, of rent accruing prior to the time for the termination of the tenancy, is not a waiver of the notice. Whether it is of itself evidence tending to prove a waiver, *quære*.

But such a reception of rent, when connected with the plaintiff's continuance in possession for several months after the tenancy would have terminated under the notice, and the landlord's allowance of such possession, is evidence competent to be submitted to the jury, as tending to show a waiver of the notice.

UPON the trial of this action, it became a material question whether there had been such a demand of rent and such a neglect

to pay as would justify a seven days' notice to quit, under the statute in relation to landlords and tenants. The plaintiff had been notified to quit on the 20th of May, 1857, by a notice which was served on the 12th of that month. It appeared that the plaintiff came into possession in September, 1856, and remained a year or thereabouts without interruption, except by an entry by the defendant, on the 25th of May, 1857, and an attempt to remove the plaintiff's livery stock from the same, upon which entry this action of trespass was brought. The court instructed the jury, in relation to a demand, in terms to which the defendant did not except, that no particular form of words was necessary in making it; that the party making it must have intended to make it, and the other party must have understood that a demand was made; that all that was necessary was, that both parties should understand, by what was said and done, that a demand was made, and that the tenant need not be told what will be the consequence if he does not pay; and that, upon such a demand, a mere neglect to pay was enough. The jury, after retiring to consult, sent the following letter to the presiding justice:

"Does the calling for rent or asking for rent in the ordinary way, and a neglect to pay the same, necessarily imply such a demand that the landlord may give his tenant legal notice to quit?"

To this the court, without any communication with the counsel on either side, returned the following reply, in writing, upon the same paper on which the inquiry was made:

"It would depend upon the circumstances of the case what was understood by the parties, and what was intended by them. It would not necessarily imply such a demand, and yet it might amount to a legal demand. It would depend upon the circumstances above stated."

The presiding justice also wrote a line upon the same paper, requesting the jury to return this paper to the court, with the other papers in the case, which they did; and the counsel on both sides were notified of these facts, after verdict, seasonably to take exceptions to the same if they desired, and the defendant excepted.

The evidence tended to show that the rent was payable monthly, if called for. It was agreed that the rent for September and October, 1857, was paid, and that on the 3d of March, 1858, $24 was paid on account of rent, and that some time between the 12th and 25th of May, 1858, Mr. Emerson, as attorney for the landlord, was paid the balance of the rent from the 1st day of December, 1856, to the 20th of May, 1857, the balance then being $46.83. Mr. Emerson thought this rent was paid to him before the 20th of May, but the plaintiff's witnesses said it was on the 22d of May, 1857. Whether the rent for November, 1856, had been paid was in controversy. Morrill testified that he made out the bills for rent every month, and presented them to Norris for payment every month, from November to April inclusive, unless he might have omitted to do so one month, and possibly two, though he did not think that he omitted a single month; that Norris, when he called, usually said he had not the money then, or that it was not convenient to pay it

then, but that he would do so soon; that he called upon Norris for the rent on the third of March, 1857, and Norris paid him $24, and said he would pay the rest in a few days; and that, having called upon Norris for the rent about the first of April, he left the bills for rent with Emerson, about the first of May, for collection; that, on one or two occasions when he had called upon Norris for rent, Norris had said that the times were hard, and he should give up the stable, and that he (Morrill) made no objection; and that he had never intentionally waived any demand, or any rights under it. Mr. Emerson testified that, before the notice to quit was served— perhaps on the 12th of May, 1857, but, as he thought, a few days earlier than that—he presented the bills to Norris for payment; that Norris objected to two of the bills because the rent was charged in them at a rate higher than he had agreed to pay, and wanted to know why in hell, if Morrill wanted his rent, he did not call for it himself, and, on being told that Morrill said he had called a number of times, and the number being stated, he said that Morrill had not called as many times as that, but had called on him a less number of times, and being more than once, and that on one occasion he had paid Morrill $24, and finally said that he would pay the rent, at the rate of $150 per year, in a few days; that, after the notice to quit was served, Norris offered to pay him the rent up to the first of May, but was told that it would not be received, unless paid up to May 20, as that would close up all the rent, and that if he staid there after that time he would be a trespasser; that afterward he paid Emerson the rent to May 20, and took a receipt. Norris, on the other hand, stated that, about the first day of December, 1856, he paid the rent for October to November, having paid for September before that time; that no demand was ever made on him for rent, as he understood it, by Morrill or Emerson, or any body else, until after the notice to quit had been served on him, and till after the time to quit, according to the notice, had passed by; that Morrill never called for money of him but once after he paid him the rent for October and November, which, as he thought, was about the first of December; that Morrill came to him the third of March, at the Central House stable, and said he was going to Boston, and was a little short of money and would like some; that he (Norris) took out his wallet and counted his money, and found he had $24, and that he let Morrill have it, telling him it was all he had; that Morrill took it and said he could get along with that, and started for the depot; that he took no receipt for the money, and that Morrill had no bills there, and nothing was said about any; that he never was again called upon for rent till the 22d day of May, 1857, when Mr. Emerson called at his office and told him he had a bill for rent in favor of Morrill; that he was surprised to learn that fact, as he saw Morrill every day, or nearly so, and that he said, "If Morrill wants his rent, why in hell don't he call for it himself;" that nothing was said by Emerson or himself about Morrill's having called for it before; that he did not then admit that Morrill had ever called for the rent; that nothing whatever was said by Emerson or himself about the time being out, or about his

being a trespasser if he stayed, or about any bills being charged at a higher rate than he had agreed to pay, and that such was not the fact. Two other witnesses, who testified that they were present on this occasion, corroborated Mr. Norris on those points. Norris further said that this was the first time he ever knew that Emerson had the bills, or that Emerson had ever said one word to him, in any way, about the bills or the rent, but that he finally told Emerson he would as soon pay the bill to him as to any body, and did so, and took his receipt for the same, and that nothing was said about paying the rent up to the first of May. The plaintiff claimed, that if there had been any demand made by Morrill for rent at any time, that such demand had been waived. And the court instructed the jury that a demand of rent may be waived, not only expressly, but also by a mutual understanding that it is waived, and that a long delay in giving notice, and payment and reception of rent after such demand, would be competent evidence for them to consider, as tending to show that there was such an understanding; and if they should find a demand had been made by Morrill at any of the times stated by him, they might then consider and find whether such demand had been waived; and that they might consider the fact of a delay in this case to give the notice to quit after the demand, if they should find there was any such delay, and the fact of the reception of rent, and the other circumstances in the case, as above stated, in settling that question; and that if, from the acts and conduct of the parties, the jury should find that they treated the tenancy as existing after the demand, in all respects as before, that they might consider that fact also, as tending to show the understanding of the parties; but that the weight which all these circumstances and facts would be entitled to as evidence, must depend very much upon the length of time which they should find had elapsed after such demand, and before such notice, or such reception of rent, or during which the tenancy had been treated by the parties as subsisting as before. The defendant's counsel requested the court to instruct the jury, "that the reception of rent up to the 20th of May would not be a waiver." The court did so instruct the jury, but added that, though it would not be a waiver of itself, it might be evidence tending to show a waiver, and might be considered as such in connection with all the other circumstances of the case by them, according to the instructions already given. The defendant's counsel also requested the court to instruct the jury, "that mere indulgence on the part of the landlord, mere neglect on his part to proceed against the tenant by warning him off, for any length of time of which there is any evidence in this case, is not a waiver." The court did so instruct the jury, but added that the neglect to proceed against the tenant for the length of time disclosed, was a circumstance which they might consider, with the other circumstances in the case, as tending to show a waiver, according to the instructions already given. The defendant's counsel also requested the court to instruct the jury, "that the question whether the tenancy was treated by the parties as continuing after the demand, does not affect the question of waiver—that the ten-

ancy continues any way till the expiration of the notice." The court declined to instruct the jury as requested, but did instruct them that, though the making of the demand was not in law a termination of the tenancy, yet that they might consider the fact that it was treated as continuing the same as before, after demand, if such was the fact, as bearing upon the question of waiver, according to instructions already given. The defendant's counsel also requested the court to instruct the jury, " that, in order to constitute a waiver, the landlord, after a neglect to pay, upon a proper demand, must either have done something or have failed to do something whereby the tenant would be prejudiced by his not giving an earlier notice;" and also " that there is nothing of the kind shown here by any evidence;" but the court declined to give either of said instructions. To the instructions given and withheld on the subject of a waiver, the defendants excepted. A verdict having been returned for the plaintiff, the defendant moved to set the same aside.

*C. R. Morrison,* for the defendant.
*Hill* v. *Hobart,* 4 Shepl. 164; *Currier* v. *Perley,* 24 N. H. 225; *Hanover* v. *Weare,* 2 N. H. 132; *Lisbon* v. *Bath,* 23 N. H. 9; *Baker* v. *Davis,* 19 N. H. 335; *Whipple* v. *Stevens,* 22 N. H. 224; *Foye* v. *Leighton,* 24 N. H. 36; *Whitney* v. *Sweatt,* 22 N. H. 10; *Kimball* v. *Rowland,* 6 Gray 224; *Hunter* v. *Osterhoudt,* 11 Barb. 33; *Jackson* v. *Allen,* 3 Cow. 220; Taylor Land. & Ten. 498; Ld. Raym. 730; *Rowan* v. *Little,* 11 Wend. 616; *Shepherd* v. *Allen,* 3 Taunt. 78; *Gray* v. *Blanchard,* 8 Pick. 284; *Lawrence* v. *Gifford,* 17 Pick. 224.

*Sawyer & Stevens,* for the plaintiff.

BARTLETT, J. If by " calling for rent or asking for rent in the ordinary way" be meant the use of terms requesting a present payment of it, cases can be conceived where such terms may be employed, and yet no demand be intended or made. If the phrase means calling for the rent as men ordinarily do, it involves a question of fact. We think the statement of facts was not sufficient to enable the court to say that, as matter of law, they necessarily amounted to a demand. If it was understood by the parties that no demand was intended, or if the lessor intended none, there would be no demand, whatever terms were used. *Norris* v. *Morrill,* 40 N. H. 401. The reply of the court might have been made fuller and more precise; but, when taken in connection with the prior instructions, which were not objected to, we understand it in substance merely to call the attention of the jury again to the materiality of the intent. Although a demand does not end the tenancy, yet it renders the tenancy liable to be terminated upon a seven days' notice, if the rent is not paid. Many acts of forfeiture do not of themselves avoid a lease, yet a subsequent unqualified recognition of the continued existence of the tenancy by the landlord, has been held a waiver of the forfeiture. *Arnsby* v. *Woodward,* 6 B. & C. 519; Taylor L. & T., sec. 492. But the landlord's act may be such, or done under such circumstances, as to show that he still insists on his

right to terminate the tenancy, and, therefore, it does not follow that a notice to quit would be a waiver of the demand. Taylor L. & T., sec. 486. The instructions of the court upon the question of waiver, when applied to the alleged demands of Morrill, seem sufficiently favorable to the defendant. *Norris* v. *Morrill*, 40 N. H. 403. There was evidence upon which the jury might have found a demand made by Emerson, as the defendant's agent, a few days previous to the notice. If such a demand was made, there is no evidence of a waiver of it before the notice was given on the 12th of May. If that notice was not waived by the defendant, it terminated the tenancy on the 20th of May. Between the 12th and 25th of May, Emerson received the rent accruing up to May 20. As the instructions that this reception of rent "might be evidence tending to show a waiver, and might be considered as such, in connection with all the other circumstances of the case," according to the instructions previously given, were in no way limited, they might have been applied by the jury to the notice of the 12th of May. The mere reception of rent accrued before the time for the termination of the tenancy, is not a waiver of the notice, or a renewal of the lease; for the lessor has the right to that absolutely, whether the tenancy is terminated or not. Co. Lit. 211, b; 3 Rep. 64; *Jackson* v. *Sheldon*, 5 Cow. 456; *Jackson* v. *Allen*, 3 Cow. 230; *Hunter* v. *Osterhoudt*, 11 Barb. 33. And perhaps the mere reception of a sum of money by a lessor, to which he is entitled, whether the tenancy exists or not, may of itself have no tendency to prove his assent to its continuance. See *Blythe* v. *Dennett*, 16 E. L. & E. 424; *Blythe* v. *Dennett*, 13 C. B. 178; 1 Saund. 288, note (x); Taylor L. & T., sec. 497. The act would seem equally consistent with the existence or termination of the tenancy. *Currier* v. *Boston & Maine Railroad*, 34 N. H. 506. A different view is suggested in *Kimball* v. *Rowland*, 6 Gray 226; but the remark there is a mere dictum, and seems made upon a supposition that the principal object of the statute was to enforce the payment of rent. If that be one object of our statute, it is not the only one, for most of its provisions are directed to enabling the parties to terminate a tenancy. The cases referred to do not support the suggestion; for, in *Tuttle* v. *Bean*, 13 Met. 275, there was also evidence of assent to the continuance of the tenancy; and in *Collins* v. *Canty*, 6 Cush. 415, rent accruing after the expiration of the notice was received. But there may be other circumstances in connection with which the payment becomes evidence of a waiver. *Tuttle* v. *Bean*, 13 Met. 275. The jury were not instructed that they might consider the reception of the rent, by itself, as evidence of a waiver, but in connection with the other circumstances of the case; and their attention had been already called to the acts and conduct of the parties. Among the circumstances stated, is the fact that the plaintiff remained in possession of the premises until the September following, without interruption, except by the defendant's entry on the 25th of May. There is no evidence of an express waiver of the notice prior to May 25, but the waiver may be by the mutual understanding of the parties. If, after the 25th, the defendant had admitted that there was such an understanding

when the payment was made, this would have been evidence of a waiver. So we think the plaintiff's continuance in possession, and the defendant's conduct in allowing it, in connection with the payment, were competent to be submitted to the jury, as tending to show a waiver. *Church* v. *Burghart*, 8 Pick. 328; Taylor L. & T., sec. 487. Of the weight of this evidence, under the circumstances of this case, we are not called on to express any opinion. If the views already expressed are correct, the last instructions asked by the defendant were properly refused. There must be

*Judgment on the verdict.*