By the Court:

Spencer, J.
The main question to be considered and determined in this case is, whether the forfeiture incurred by the underletting in Hay, 1868, was subsequently waived by the act of the plaintiff in accepting rent under the lease, which became due after the act of forfeiture, and after the same became known to plaintiff.
I think this question would have been practically decided in the affirmative on the argument, had not the plaintiff’s counsel claimed that a negative conclusion had been reached by the General Term of this court in the case of The Importers and Traders’ Insurance Company v. Christie, reported in 5 Robertson, at pages 169 to 183, in which our late learned and honored chief-justicé delivered the opinion of the court.
After a full examination of the cases bearing upon this question, I have concluded that the main questions in this case and the Christie case are so broadly distinctive and different from each other that the decision of the court in the latter action in nowise governs or affects this case.
This question was argued and decided, in a very similar case, in the Court of ¡King’s Bench in the year 1778 (Goodright v. Davids, Cowper’s Reports, 803). The covenant in the lease against underletting is nearly identical with the covenant in this lease. Its breach was fully established, as also the facts that the lessor knew of the same, and with such knowledge received rent upon the premises, and afterwards brought ejectment to recover the premises because of a forfeiture under a breach of this *294 covenant; and it appeared in that case as in this, that the under-letting continued after the payment of the rent, and until after the action was brought.
Thornton, counsel for the tenant, cited as the law in England the following paragraph from Coke on Littleton: If the lessor accept rent due at a day after, he shall not enter for the condition broken, because he thereby affirmeth the lease to have continuance.”
Lord Mansfield, in announcing the opinion of the court, says:
“ This case is extremely clear. To construe this acceptance of rent due since the condition lyrolcen a waiver of the forfeiture, is to construe it according to the intention of the parties. Upon the breach of this condition the landlord had a right to enter. He had full notice of the breach, and does not take advantage of it, but accepts rent subsequently earned. That shows he meant the lease should continue.”
This is one of the early English cases, but I believe that this construction has been held by the English courts, in an unwavering line of decisions, to the present time. I refer only to one or two later cases.
In Croft v. Lumly, Court of Queen’s Bench, reported 85 E. C. L. Reports, 647, and in the Court of Exchequer, page 681, and in the House of Lords, vol. 96, E. C. L. Reports, page 1070, this question of a waiver of the forfeiture by payment of rent was fully discussed.
In the House of Lords eight judges out of nine who heard the case expressed themselves clearly and fully in support of the doctrine as laid down in the earlier cases; and also that, in the case before them, if there had been a forfeiture, it had been fully waived by the receipt of the money which was offered as rent (and yet in that case the lessor refused to accept it as rent, although he took it from defendant when so offered).
Dendy v. Nichols (93 E. C. Law Reports, 376) is a case also in point. Crompton, J., says: “ If this action (ejectment) were to be held to be maintainable, this gross inconsistency would *295 result, namely, that the plaintiff, having already recovered the rent to Lady Day, 1857, would recover the land by reason of the forfeiture in 1854, and mesne profits down to the time of the verdict.
“ The plaintiff has elected conclusively to treat the defendant as his tenant, and cannot afterwards turn around and make him a trespasser.”
This construction of the law has been followed by the American courts, especially the courts of this State. Judge Sutherland discussed this question in 1824 (Jackson v. Allen, 3 Cow., 230), and after citing many English cases, says: “ If the lessor, therefore, with a full knowledge of the forfeiture, had accepted rent which fell due after that event, the eases cited show it would have been a waiver.”
Chief-Justice Savage says (Bleecker v. Smith, 13 Wend., 534): “ Any act of the lessor which recognizes the lease as a subsisting operative contract, such as receiving rent wider it, is a waiver of the forfeiture.”
In the review of “Dumpor’s case” (Smith’s Leading Cases, 6 Am. ed., vol. i., part 1, page 89 and post), the learned author and editors have collected and cited nearly all of the early and later English and American cases relating to this question of waiver.
I have been unable to find any case that will support the position that is claimed by plaintiff’s counsel in regard to the case in 5 Robertson, yet I do find much good authority in support of that case without placing it in opposition to the current of authorities on this question of waiver that have been flowing in one direction for over a century.
In the Christie case (5 Robertson, 169) the rent in question was paid after the cause was at issue, during the pendency of the action of ejectment, and the learned justice before whom the same was tried states (as a finding of fact) that the payment by Christie of the quarter’s rent due on the 1st of May, 1866, and the receipt of the same by plaintiff, was without the knowledge or supposition of either party that such payment and *296 receipt would affect the rights of the parties in the action, which was treated at the time as cm existing action. ¡Now, I hold that paying the rent under these circumstances is a very different act, and fraught with very different results, than if paid under the circumstances detailed in the case now under consideration. It has been held, in many cases, that the facts which form a case of waiver of forfeiture, through a payment of rent, make up a question of intent for the court or jury to pass upon, and some of the English judges have held, or suggested, that the question (which generally arises), “ Did the lessor, by receiving the rent, intend to waive the forfeiture?” should be, or might properly be, submitted to the jury as a question of fact.
Without further discussion of the extreme view of the question, I notice the following eases in support of the Christie case:
“ Bent may be received under circumstances showing it to be paid and accepted as a compensation for use of land, and not with the intention of setting up (setting up—restoring or renewing) the lease. Nay, a contrary intention may be expressed at the time of its receipt. A receipt for rent paid under such circumstances would not amount to a waiver of the forfeiture” (Doe v. Butten, 1 Cowp., 243).
“A receipt of rent after the lessor has, by unequivocal act, such as bringing an action in ejectment (as had been done in the Christie case), expressed his intention to treat the lease as void, cannot operate to revive it” (Jones v. Carter, 15 M. & W., 718).
In Manice v. Miller (26 Barb., 42), a decision of the General Term of the Supreme Court of the First District, a landlord was held to be entitled to re-enter for a breach of condition, caused by the non-payment of taxes, although the time of payment of the same had been extended, and rent had been received which had accrued during the interval, and after the period originally fixed for the fulfilment of the condition. The court held that the effect of the receipt of rent, or other prima facie evidence or admission of the continuance of the tenancy, was a question of intention, it being inferred, from the payment of rent, that *297 both parties recognized the lease was valid, yet that the contrary might be shown by express proof. ' I consider the Christie case as a decision of the General Term of this court sustaining this doctrine: “ That the question, whether the reception of rent is a waiver of a prior forfeiture, is one of intent, to be considered and decided upon by the court or jury upon the facts arising in each case.”
It was contended, on the argument by the plaintiff’s counsel, that this covenant or condition of the lease in question is a continuing covenant, as illustrated by the cases of Ambler v. Wood-bridge (9 Barn. & Cress., 376), Fowler v. Peck (1 Barn. & Ald. 428). I think otherwise. It was stipulated on the trial (substantially) that there was but one underletting, and the under-tenant remained in possession under the same until after the commencement of this action. The act of forfeiture was single and indivisible. It was complete in May, 1868. There has been no repetition, no breach, but the one, which is the only one complained of.
Exceptions overruled, and judgment ordered for the defendants upon the verdict, with costs.