WALTER SHRIVER et al., Appellants, *v.* EDWIN SHRIVER et al., Appellants. JOHN LIVINGSTON, Respondent.

*It seems* that when the title of a party in possession of lands has become fixed and absolute by reason of the statute of limitations, it is not affected by a subsequent statute extending the time of limitation.

A purchaser upon, and in possession under, a foreclosure sale, void as against the owner of the equity of redemption, because he was not made a party to the foreclosure suit, does not stand in the position of mortgagee or assignee of the mortgage in possession, but as a stranger.

The right of such owner, therefore, was not barred under the Code of Procedure by a ten years' possession by such purchaser, as the twenty years' (§ 78), not the ten years' (§ 97) limitation applied.

*Miner* v. *Beekman* (50 N. Y. 337), distinguished.

A clear adverse possession for twenty years makes a title to lands which a purchaser, upon a partition sale, may not refuse; he will, however, not be required to take title where there are circumstances which may prevent the possession from being adverse.

Such a purchaser will not be compelled to complete the purchase where there is some reasonable ground of evidence shown in support of an objection to the title, or where the title depends upon a matter of fact which is not capable of satisfactory proof, or, if capable of that proof, yet is not so proved.

If, after the vendors have produced all the proof they can, a reasonable doubt still remains, the title is not marketable and the purchaser is not obliged to take it.

*It seems*, that a rational doubt exists when a court of law would not feel called upon to instruct a jury to find the existence of the fact on which the vendors' title depends.

The parties to a partition suit claimed title through M., who purchased a portion of the lands on a foreclosure sale. McI., the owner of an undivided one-half of one lot so sold, was not made a party to the foreclosure suit. The purchaser entered into possession in 1856, and she and her successors in interest had actual, continuous, uninterrupted possession, beginning with the entry under the conveyance on such sale, and claiming exclusive title for over twenty years. An affidavit used upon a motion to cancel the sale and relieve the purchaser on the partition sale, which was made in 1880, alleged, upon information and belief, that McI. died "some years ago" in Australia, and that his heirs were residents of Great Britain. This averment was not denied or explained. *Held*, that it was proper to be considered in determining the question of title, that a fair interpretation of it would carry the event of the death so far back as to fall within the term of twenty years; that it was to be assumed McI. died, as stated, and died intestate; and, that the probabilities were that his heirs were aliens, in which case any interest he had in the lands escheated to the State, as against which the statute of limitations had not yet run. (Code of Procedure, § 75 ; Code of Civil Procedure, § 362.) Also, that if these probabilities were not in the case, there was a possibility that some of the heirs had been, since the death of McI., under the disability of infancy, or some other disability, so that the statute was not a bar against them.

In 1857 McI. transferred all his property, real and personal, to certain creditors to be applied toward their indebtedness. The assignees did not sell, but in 1859 made an assignment of all their property in trust for creditors ; their assignees fully executed the trust, the property so conveyed by McI. reverted to them, and they quit-claimed and released all their interest in the premises to M. *Held*, that after the assignment by McI. there remained in him and his successors in interest an equity of redemption ; that the lapse of ten years would have been a bar to that equity, but for a disability to sue, but the possibility of the

existence of the disability, as above stated, created a doubt ; that all the interests of the assignees of McI. passed to their assignees, subject to such equity of redemption, but reverted to them ; that they had no authority to release to M. and that transaction did not divest McI. or his successors of their interest, and it was subject to the same doubt.

Two lots were purchased at the partition sale, one of which only was affected by the objections raised ; both were necessary for the use for which the purchaser designed them. *Held,* that he could not be compelled to take title to the other separately.

Upon decision of the motion below the court made an allowance to the purchaser for counsel fees, paid in examining title. *Held,* that the amount was in the discretion of the court below, and its decision was not reviewable here.

(Argued October 4, 1881 ; decided October 28, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made May 20, 1881, which modified an allowance for costs, but otherwise affirmed an order of Special Term, relieving John Livingston, a purchaser at a sale under the judgment in this action, from his purchase.

The action was for partition of certain premises situate in the city of New York.

Livingston at the sale bid off two lots for the sum of $12,000 and paid the required percentage and the auctioneer's fee and signed a memorandum of the purchase. He filed and served written objections to the title before the designated time for completing the purchase had expired, and on the day fixed for performance, he tendered the balance of the purchase-money with an offer to complete, provided an unobjectionable and marketable title could be given, but declined to accept the title offered. He then moved the court, upon his verified petition, that he be discharged from the purchase, on several grounds therein alleged. His motion was granted with $100 costs, and $250 for services of counsel in examining the title. The General Term reduced the allowance for costs to $10.

The several grounds of objection specified were :

First. That the judgment in the action was invalid and void by reason of an infant defendant never having been served

SICKELS — VOL. XLI.          73

with the summons and complaint. It appeared that the infant mentioned in this objection was a non-resident of the State, over the age of fourteen years. She filed her petition for the appointment of a guardian *ad litem*, upon which such guardian *ad litem* was appointed, and the summons and complaint was served upon him. He appeared in the action on behalf of the infant and put in an answer. The court below held that it was not necessary, under such circumstances, that it should appear that she had been served with the summons.

Second. A conveyance had been made to an insurance company to secure a loan. The company executed a reconveyance, which was not acknowledged. The court held that the conveyance was a mortgage and the reconveyance was in satisfaction of the mortgage; that whether it was acknowledged in due form or not was not material.

Third. It appeared that at one time John McIlveen was the owner of an undivided one-half of one of the lots sold to Livingston. The parties to this action claimed title on sale under a judgment in foreclosure. The lot was bid off and conveyed to Sarah E. Murray in 1856, and she thereupon entered into possession and she and her successors in interest have since had possession. McIlveen was not made a party to the foreclosure suit. In April, 1857, he executed an assignment of all his property, real and personal, to John and William J. Beck, creditors, the same to be applied toward his indebtedness to them. In 1858 the Becks executed an assignment of all their property in trust for creditors, to Augustus B. Theriott and Chauncey Hurd. In one of the affidavits upon which the motion was founded it was averred, on information and belief, that McIlveen died " some years ago " in Australia, and that his heirs-at-law are residents of Scotland in the kingdom of Great Britain, and that Theriott and Hurd died before fully executing the trust, and no successor has been appointed. The verified petition of the purchaser alleged that he purchased the two lots for the purpose of erecting "French flats" thereon, and that one of the lots would be of no value to him for that purpose. In the opposing affidavits it was averred, on infor-

mation and belief, that Theriott and Hurd did, prior to their decease, settle with and satisfy all the claims of the creditors of the Becks, without making any disposition of the McIlveen interest in the lot and the same reverted to the Becks, and that they quit-claimed and released all their interest to Mrs. Murray. Further facts appear in the opinion.

*S. Jones* for appellants. Upon the facts the grantee in the referee's deeds and all claiming under her stand in the position of a mortgagee in possession, claiming the absolute title by reason of the mortgage being forfeited by non-payment. (*Miner* v. *Beekman,* 50 N. Y. 337; Code of Procedure, §§ 97–102; Code of Civil Procedure, §§ 388–402.) The Shrivers have a perfect title by adverse possession which is a perfect bar to an ejectment or other possessory action. (*Stuyvesant* v. *Dunham,* 9 Johns. 61, 63; *Grady* v. *Wood,* 20 Barb. 543–547; Atkins on Marketable Titles, 396, 403; *Seymour* v. *De Lancy,* 1 Hopk. Ch. 436, 449.) A purchaser at a master's sale is only entitled to such a title as a purchaser at a private sale would be bound to accept from his vendor. (*Spring* v. *Sanford,* 7 Paige, 550; Atkins on Marketable Titles, 520.)

*Francis Byrne* for respondent. A guardian *ad litem* cannot be appointed for an infant defendant until he has been served with the summons. (*Grant* v. *Van Schoonoven,* 9 Paige, 255; *Wright* v. *Miller,* 8 N. Y. 9; *Glover* v. *Haws,* 19 Abb. 161; *Bosworth* v. *Vanderwalker,* 53 N. Y. 59.) Mr. McIlveen having died years ago, leaving heirs in Scotland, and both of said assignees having also died before duly executing their trust, and no successor having ever been appointed, the foreclosure action was a nullity as to the right of said heirs or creditors because they were not parties therein. (*Watson* v. *Spence,* 20 Wend. 268; *Reed* v. *Marble,* 10 Paige, 409; *McCahill* v. *Hamilton,* 20 Hun, 388; *Raynor* v. *Raynor,* 21 id. 36; *Miner* v. *Beekman,* 50 N. Y. 337.) Informality of service of process is a sufficient excuse to refuse order to compel purchaser to take title. (*Cook* v. *Farren,* 34 Barb. 95; S. C., 21 How.

286.) A purchaser upon a partition sale has a right to require a good title and will not be compelled to complete his purchase and accept a deed which leaves him to the uncertainty of a doubtful title, or to the hazard of a contest with other parties, which will seriously affect the value of the property. (*Jordan* v. *Poillon*, 77 N. Y. 518; *Blakey* v. *Pulder*, 13 How. 476; *Althouse* v. *Radde*, 3 Bosw. 410, 430.) A vendee discharged from purchase on account of defects in title is entitled to a return of deposit, with interest from time when sale was to be completed, expenses of investigating title, and costs of motion to be discharged. (*Rogers* v. *McLean*, 10 Abb. 306.)

FOLGER, Ch. J. Most of the objections to the title set up by the purchaser have been answered by the learned General Term. The one, that arises from the fact that McIlveen was not made a party to the foreclosure of the Douglass mortgage, is presented in this court differently from what it seems to have been at the General Term. It is needful that we consider it further. The appellants seek to avoid that objection, by the claim that the statute of limitations has run against any right of McIlveen or his assigns. This claim has two branches. *First*, it is insisted that that right is barred by the lapse of eleven years since Mrs. Murray entered into possession of the premises under the foreclosure sale and referee's deed. (Old Code, §§ 99–102.) The case is supposed to be like that of *Miner* v. *Beekman* (50 N. Y. 337). It is different in an important particular. There the entry was by the mortgagee, who was also the purchaser at the sale. He thus became a mortgagee in possession, and could defend against the owner of the equity of redemption, or his representative, any action, except one for an accounting of the rents and profits, and to redeem. (*Phyfe* v. *Riley*, 15 Wend. 248; *Van-Duyne* v. *Thayre*, 14 id. 233.) The new Code has changed the time of limitation in such case to twenty years. (New Code, § 379.) But that would not have affected Mrs. Murray's right if she had acquired one, for it would have be-

come vested before that change in the law, and sacred from alterative legislation. (*Beckford* v. *Wade*, 17 Ves. 97.) She did not acquire any, however, for she was not the mortgagee nor the assignee of the mortgagee, in possession, and could not in that character have defended against McIlveen or his assigns. (*Watson* v. *Spence*, 20 Wend. 260.) She could not have defended as purchaser, for the foreclosure was void against him and them. (Id.) He or they had twenty years from the entry in which to bring suit to regain the possession.

It is the second branch of the appellants' claim that there was a clear adverse possession of twenty years. The facts of the case make out a continuous, uninterrupted actual possession, beginning with an entry under claim of exclusive title founded on a written instrument and so kept up for over twenty years. (New Code, § 369.) A clear adverse possession for that time makes a title which a purchaser at a judicial sale may not refuse. (*Seymour* v. *DeLancey*, Hopk. Ch. 436.) Though there may have been possession thus characterized for the requisite time, there may also be circumstances that will prevent it becoming adverse. There are circumstances in the case in hand that need to be examined, for that reason. We may assume that McIlveen was alive when Mrs. Murray entered into the premises in 1856. He gave an assignment in writing dated in that year and acknowledged in 1857. There is an affidavit in the case, made in 1880, averring that McIlveen died "some years ago," in Australia, and that his heirs-at-law are residents of Scotland in Great Britain. This averment is on information and belief, and it is objected by the appellants that a statement on information and belief is not evidence. We must consider, however, that courts of equity have assumed jurisdiction of this class of questions between vendor and purchaser, and having done so they must pass upon them, and must pass upon them by the means in use in such inquiries, one of which is the production of allegations of fact by affidavits as either within the knowledge of the affiant or existing in his information and belief. These affidavits submitted to the opposing parties (as were the affidavits in the case),

and answered, or assented to tacitly or expressly, in their material allegations, or some of them, form a basis of adjudication. (*Quincy* v. *Foot*, 1 Barb. Ch. 496.) It is to be noticed that this allegation is not denied or explained, nor its force broken by the appellants, nor is there any attempt made to do so. The appellants, the vendors, ought to know better than the vendee the facts in which their title is involved, and if so important an allegation is incorrect, or vague and indefinite, they ought to be as able as the purchaser to give a court information about it. We must take it then as shown in the case, that McIlveen died and left heirs-at-law as stated. The time when he died is not certain. The phrase "some years ago," may carry the event so far back as to fall within the term of twenty years that began to run in 1856 and would end in 1876. That would be a fair interpretation of it. There is no proof that he left a will. We must assume that he died intestate. If his heirs-at-law in Scotland were aliens, then any interest he left in the lands escheated to the State, and the statute has not yet run against the State. (Old Code, § 75 ; new Code, § 362.) The only fact as to them made known to us is that they are residents of Scotland. The probabilities are that they were subjects of the Queen of England, and were aliens. If those probabilities were not in the case, there is the possibility that some of them have been, during the lapse of years, since the death of McIlveen, under the disability of infancy, or some other disability. (Old Code, §§ 88, 101 ; new Code, §§ 375, 396.) Before discussing the effect of these probabilities and this possibility, it is well to see whether any other facts in the case preclude the necessity of so doing. It appears that in 1857 McIlveen made a transfer of all his property, real and personal, to the Becks for their benefit and behoof forever, but to apply the same toward their indebtedness. This was not an absolute transfer of all right to the Becks. The true construction of it is, that it was a transfer as a means of paying McIlveen's debt to the Becks. If indeed they had sold and conveyed, as they had authority to do, McIlveen's interest would have passed to their grantees and he have had no claim

upon it or upon them save for a proper application of the avails, and for any surplus, equity would sustain him or his assigns in calling the Becks to an account, and if they had not sold, in asking for a reconveyance by reason of the debt having been otherwise paid, or of an offer to pay it. There was an equity of redemption in McIlveen, and his assigns or successors in interest. The lapse of eleven years, but for disability to sue, would have been a bar to this equity, before the new Code. The same possibility of the existence of a disability comes in here, however, to create doubt whether the bar of the statute has attached. The fact appears, that the Becks did not sell and make conveyance on a sale. In 1858 they made an insolvent's assignment in trust for creditors, to Theriott and Hurd, of all their property, real and personal. Under that assignment, all their interest in these premises passed to the assignees, yet subject to the equity of redemption, existing in McIlveen or his representatives, with all its incidents, as we have above stated them. There is an allegation in the affidavits, that the assignees fully executed the trust, and that the property reverted to the Becks, and this averment is sustained by another that the Becks quit-claimed and released all their interest in the premises to Mrs. Murray. Then it reverted to them with all its incidents. If the indebtedness to them remained unpaid, and their conveyance to her was on a bargain and sale, McIlveen and his assigns would have been divested of title and interest in the premises, as they had authority to sell and dispose, and the right left in him or his assigns would have been to have an accounting, due application of the avails of the sales, and payment over of any surplus. It does not so appear. It is stated in the affidavit to be a quit-claim and release of all interest. This was without the bounds of their power as given by McIlveen. It was a giving of it away, not a sale for the good of McIlveen; Mrs. Murray was bound to know what the title or authority of the Becks was. So that transaction was subject to the same doubt, whether there was not a successor in interest to McIlveen, who for awhile under a disability to sue, may not, after disability is removed, come

within the time of the bar, and make claim for an accounting and redemption. Thus the inquiry comes back to the possibility of which we have spoken. The appellants style this a mere suspicion ending in a suspicion, a possibility based upon a possibility, a bare possibility, and cite Atkinson on Marketable Titles, 396, 403, that such an objection to a title is not good. *Seymour* v. *DeLancey* (*supra*) is also cited, where the chancellor said, that the slight proof in that case, that one of the grantors may have been an alien, or if he was a citizen, the mere contingency that his title may have resided since his death in persons disabled to assert their rights, would not be thought sufficient to impeach his title. He had said before that, that there was not proof enough of an adverse possession for twenty years. Hence his remark was *obiter*. Nor was it stated as a deliberate conviction, nor was the proof positive of the alienage of the grantor, nor was there any proof of his heirs-at-law, and there was so much doubt of the title that he did not consider it as sufficiently sustained and directed an issue of law to have the question tried. We must seek elswhere for a rule applicable to all cases, and which will guide us in this. As a general rule, a title which is open to judicial doubt is not a marketable title. What is a sufficient ground for judicial doubt is not to be conclusively reduced to fixed and determinate principles, for it depends in some degree upon the discretion of the court. (*White* v. *Damon*, 7 Ves. 35.) Yet there have been rules uttered by courts, that aid in disposing of particular cases. Thus it is said in *Price* v. *Strange* (6 Madd. 159), that, in attempting to lay down a rule, it may be stated that a purchaser is not to take a property, which he can only acquire in possession by litigation and judicial decision. Which is equal to saying, nor one the possession of which he must thus defend. A title may be doubtful, which is to say unmarketable, because of the uncertainty of some matter of fact appearing in the course of the deduction of it. And if, after the vendor has produced all the proofs that he can, a rational doubt still remains, a title is not marketable. It seems that a rational doubt may be said to exist when a court of law would not feel called upon to instruct a jury to find

that the fact existed, on the existence of which the vendor's title depends. (*Emery* v. *Grocock*, 6 Madd. 54.) When there is some reasonable ground of evidence shown in support of the objection, the doubt goes further than suspicion. Where the title depends upon a matter of fact, such as is not capable of satisfactory proof, as in *Lowes* v. *Lush* (14 Ves. 548), a purchaser cannot be compelled to take it; or where the fact is capable of that proof, yet is not so proved. (*Smith* v. *Death*, 5 Madd. 371.) In this class of cases are those where the title depends on presumption grounded merely on the lapse of time. It is said by a text-writer, that, as between vendor and purchaser, the court ought not to presume, unless it believes on circumstances strong enough to induce belief, that the fact is actually so. (Atkinson on Marketable Titles, 419.) When we apply these views to this case, can we say that a court would make no error if it directed a jury to find that there did not exist any person who could still question the possession held under the mortgage sale? or that there was not an escheat to the State and a right there? Could a judge sitting in equity believe that the possessory title is entirely free from such liability to successful assault? Are the circumstances so strong as to induce that belief? A jury might find so, and the verdict would be held good if the issue was left to them. But the facts that have been shown and not rebutted, or explained away or softened, are too strong, not to create a reasonable doubt that ought to be solved, before a bidder at a judicial sale, now unwilling to complete his purchase, should be compelled to take the title. The title of the vendors rests upon a presumption raised by lapse of time. But in conflict with that presumption, facts, not suspicions only, appear, raising a rational doubt whether a vendee, relying upon that title, may not be called upon to defend, and to produce proof to explain or obviate those facts. That proof the vendors do not bring forward for the use of the vendee.

Though but one lot of the two sold is affected by the objection raised, the purchaser ought not to be compelled to take the other separately. His purpose in buying took in the

acquisition of both lots, and he cannot reach it unless he has both. It would be unfair to him to compel him to take one which he cannot put to the use which he contemplated for both.

The amount allowed to the purchaser for counsel fee was so much in the discretion of the courts below that we cannot review their allowance.

It is possible that further inquiry on the part of the vendors (and on them is the duty, and should be the labor of inquiry), may bring facts to light that will remove this doubt. It would not, in our judgment, be an unwise exercise of power to enable them to make the attempt. Yet that is a matter entirely for the disposition of the learned court below.

It must not be taken, from any thing that we have said, that we do not regard a title good that rests alone upon a clear adverse possession of twenty years; nor that we pronounce the title of the vendors in the case before us as defective. What we hold is, that the vendee has brought such facts and circumstances as call upon the vendors to show how they may be met and nullified before they can compel him to complete his purchase.

The order appealed from should be affirmed.

All concur.

Order affirmed.