MARY POST AND OTHERS, APPELLANTS, *v.* ADOLPH BERNHEIMER, RESPONDENT.

*Condition against certain uses of property— when it is valid — a purchaser at a partition sale will not be compelled to accept a doubtful title — a mere possibility that he may be disturbed will not justify a refusal to accept a title — what evidence of the release of a condition is sufficient to make the title good.*

A bidder at a partition sale refused to complete his purchase upon the ground that the premises were incumbered by a condition, inserted in a deed made by by one of the plaintiffs' grantors in 1811, which provided " that the aforesaid premises shall not, nor shall any part thereof, or any building or buildings thereon erected, or to be erected, be at any time thereafter used or occupied

as a tavern or public house of any kind" The plaintiffs in this action, brought for the specific performance of the contract of sale, claimed that the condition had been released by the grantors in the deed. It appeared from certain proceedings in partition between the heirs of Joel Post, in which the premises in controversy were set off to the plaintiffs, that a release of the condition was then produced and proved before the master in chancery, to whom the subject-matter of the action in partition had been referred. These proceedings were completed in the spring of the year 1846, and it was made to appear upon the trial of this action that between that time and the time of the sale in controversy the release itself had been lost or mislaid and could not, therefore, be produced. The master befo whom the proofs were taken was dead. A solicitor, who seemed to be the only person having positive knowledge of the existence of the release, proposed to make an affidavit of the fact and deliver it to the defendant as evidence of the existence of the release, but the defendant refused to accept it.

*Held,* that the condition inserted in the deed was valid and constituted an incumbrance upon the title which, if unremoved, would justify the purchaser in refusing to accept it. The court re-examined this question and reaffirmed its decision thereof heretofore made in *Post* v. *Weil* (8 Hun, 418).

That although a purchaser will not be compelled to accept a title which is so doubtful that it may expose him to litigation, though the court may believe it to be good, yet to bring a cause within this principle there must be some rational doubt concerning the validity of the title, and where upon the evidence a court would be warranted in directing a verdict in favor of the title the objection will not be sustained.

A mere possibility that the purchaser may be disturbed on account of some alleged defect of title, is not sufficient to justify him in refusing to accept it.

That in this case the objection should be overruled as the fact of the existence of the release was so satisfactorily indicated as to render it to the last degree improbable that any person would attempt to enforce a forfeiture occasioned by a failure to observe it, and as it was probable, as there was no evidence of its destruction, that the instrument itself might thereafter be found.

APPEAL from a judgment in favor of the plaintiff, recovered on the trial of this action at a Special Term.

*William M. Evarts,* for the appellant.

*James C. Carter,* for the respondent.

DANIELS, J.:

The action was brought for the specific performance of a contract for the sale of real estate. The property in controversy consisted of six lots situated near the Riverside park on Riverside and Claremont avenues, in the city of New York. Five of them were pur-

chased by the defendant himself at an auction sale of this and other property for the price of $50,000, and the right of the defendant to the other was derived by assignment from the person to whom it was struck off at the auction sale. By the terms of the sale ten per cent of the purchase-price was made payable at the time of the sale, and that amount was accordingly paid on the six lots. The 15th of May, 1873, at 11 o'clock A. M., at the office of Messrs. Evarts, Southmayd & Choate, No. 52 Wall street, were designated as the time and place where the balance of the purchase-money was to be paid and the deed would be ready for delivery. The parties met at that time and place to complete the business by the delivery of the deed and the payment of the residue of the purchase-money. Objections were then taken to the statement of the boundaries in the deed, and the completion of the business was adjourned for one week to afford the grantors an opportunity for correcting the descriptions. At the expiration of that time the parties again met at the same place. The deed had then been corrected, but the defendant declined to receive it without the production of a release, discharging the condition reserved in a deed of twenty-one acres of land, including the lots in controversy, made on the 29th of May, 1811, by Michael Hogan and others to Jacob Mark under and through which the plaintiffs had derived their title. It was asserted on behalf of the plaintiffs that this condition had been released by the grantors in this deed, and it appeared by proceedings in partition between the heirs of Joel Post, in which the property in controversy had been set off to the plaintiffs, that a release of the condition had been produced and proved before the master in chancery, to whom the subject-matter of the action in partition had been referred. These proceedings were completed in the spring of the year 1846, and it was made to appear upon the trial of this action that between that time and the time of the sale in controversy the release itself had been lost or mislaid, and could not therefore be produced as it was required to be by the defendant to support the plaintiffs' title. The master before whom the proofs were taken in the partition suit was deceased, and a solicitor in the proceedings seemed to be the only person having positive knowledge of the existence of the release. He proposed to make an affidavit of the fact and to deliver it to the defendant as evidence of the existence of the

release, but the latter refused to accept it and insisted upon the production of the release itself, and because of the inability of the plaintiffs to produce the instrument, which at that time had not been recorded, the defendant after tendering his check for the balance of the purchase-price refused to accept the deed prepared and offered to him for the conveyance of the property. This refusal was placed upon the fact that by the terms and agreement of sale an indisputable title was to be given by the vendors by a full covenant warranty deed, free and clear of all incumbrances, excepting the ordinary restraints to prevent nuisances and the carrying on of offensive trades and business upon the property. Several interviews afterwards took place between the defendant's counsel and the counsel acting for the plaintiffs, concerning the title to the property, and to remove the objection made by the defendant the opinions of Mr. Evarts and of Mr. Charles O'Connor were taken as to the validity of the objection urged on behalf of the defendant. That of the former gentleman was adverse to the objection, while that of Mr. O'Connor was to the effect that it had been well taken. The defendant accordingly never receded from the position taken by him, and this action was afterwards brought specifically to enforce the performance of the contract.

Another action upon the same terms of sale had previously been instituted by the plaintiffs against another purchaser to enforce the performance of the contract of purchase made by him, and that brought up for consideration the terms and effect of the same condition. And in its disposition it was held by this General Term that the condition was valid and had been legally reserved, and that part of the controversy was accordingly determined adversely to the present plaintiffs. (*Post* v. *Weil*, 8 Hun, 418.)

Upon the argument of the present appeal the court was pressed by the counsel for the appellants to reconsider this decision for the reason which was urged, that the deed should not be so construed as to contain a condition, but as merely limiting the use which might be made of the premises by a covenant on the part of the grantee. The terms made use of for this purpose as they were inserted in the deed are as follows: "Provided always, and these presents are upon this express condition, that the aforesaid premises shall not, nor shall any part thereof or any building or build

ings thereon erected or to be erected, be at any time thereafter used or occupied as a tavern or public house of any kind." The language as it was made use of was appropriate only for the creation of a condition, and that it was so understood and designed by the parties is to be further inferred from other portions of the deed referring to this as a condition. Before the deed itself was made, a contract had been entered into between Hogan and Jacob Mark for the sale of the property for the price of $16,000, and it is declared in the deed that the contract was " upon the specific condition that no part of the land or buildings thereon should ever be used or occupied as a tavern." And in the portion of the deed to which the persons executing it as trustees were more .particularly the parties, the grant is stated to be "subject to and upon the condition hereinbefore expressed." And the same clause follows and qualifies the warranties contained in the deed, and the final covenant for quiet enjoyment is in like manner made "subject always to the condition hereinbefore expressed and the rights which may at any time result therefrom." These several clauses are so clearly and explicitly expressed as to exclude all probability that the parties intended anything different from the creation of a condition by means of the language inserted for this purpose in the deed. And when such an intention has been expressed, or is necessarily to be inferred from the deed, the court is required to be controlled by it and to give effect to it in the disposition of the case. (*Glaholm v. Hays*, 2 Mann. & G., 257.)

The reason and sense of the whole instrument is to be considered, and if by that the design to create a condition is manifested, the court is required so to determine, and in that manner to carry into effect the design and purpose of the parties. (*Ritchie v. Atkinson*, 10 East, 295 ; *Roberts v. Brett*, 11 H. L. Cases, 337.)

The omission of a clause providing for a re-entry in case of a violation of the condition has been relied upon as a cogent circumstance conflicting with the propriety of this construction, but that cannot be regarded as a very essential fact in the case, for advantage may be taken of the breach of such a condition by an action of ejectment, either by the grantor or his heirs, although no right of re-entry be in terms reserved in the deed either for himself or for his heirs. (4 Kent [7th ed.], 127 ; *Wigg v. Wigg*, 1 Atk., 382 ;

*Doe* v. *Watt*, 1 Mann. & Ry., 694; *Jackson* v. *Allen*, 3 Cow., 220; *Gray* v. *Blanchard*, 8 Pick., 283; *Osgood* v. *Abbott*, 58 Maine, 73; *Jackson* v. *Topping*, 1 Wend., 388.) And an actual entry for the breach of such a condition has been dispensed with in this State by statute. (3 R. S. [6th ed.], 574, § 19.)

While the condition was not as fully expressed as it was in the deed, the effect of which was determined in *Plumb* v. *Tubbs* (41 N. Y., 442), its legal effect was still the same and it was clearly a legal condition under the law as it was declared in that decision.

It was reserved in that portion of the deed in which Hogan and wife were the grantors of the title, and the facts, that he had previously entered into a contract for the sale of the property to Marks, and joined as a grantor in the deed made, pursuant to the terms of the contract, and afterwards received a conveyance from his trustees reconveying to him whatever remainder or residue there was of the property in their hands, as trustees, remaining after the execution of the trusts to which it had been devoted by a trust deed executed by Hogan and wife previous to the time of the execution of the deed to Mark, support the conclusion that Hogan continued the equitable owner of the estate, subject only to the execution of the trusts provided for in the trust deed. It is to be assumed from these circumstances and the statement made of the trust deed in the deed to Mark, which is the only evidence of what the trust deed contained, that the trust was not expected to exhaust the entire beneficial interest in the property, and that a resulting trust, after the execution of the trusts provided for, consequently, under the law, existed in Hogan's favor. (1 Perry on Trusts [2d ed.], § 152; Hill on Trustees [3d Am. ed.], 179.) And because of that resulting beneficial interest, he was a proper, even if not a necessary party to the deed executed and delivered to Mark, and the reservation of the condition to him was therefore not obnoxious to the objection that it was created in favor of a stranger. The law is well settled that such a condition cannot be reserved in favor of a stranger. (4 Kent [7th ed.], 131; *Nicoll* v. *N. Y. and Erie R. R. Co.*, 2 Ker., 121; *Craig* v. *Wells*, 1 Ker., 315, 323; *Towle* v. *Remsen*, 70 N. Y., 303, 312; *Owen* v. *Field*, 102 Mass., 90; *Fonda* v. *Sage*, 46 Barb., 108.) But Hogan, in whose favor the condition was reserved, was in no proper or legal sense a stranger

to the title conveyed by the deed to Mark. It was executed and delivered to carry into effect the preceding contract made between these parties, and to the extent that Hogan retained a resulting beneficial interest in the property, which made him its equitable owner, subject to the execution of the trust, he was capable of conveying a substantial interest or title to the grantee in the deed, and himself and his heirs could insist upon the observance of the condition either by an action for the recovery of the property in case of its breach, or could restrain its violation by means of an injunction. (*Dorr* v. *Harrahan*, 101 Mass., 531; *Linzee* v. *Mixer*, Id., 512; *Stuyvesant* v. *Mayor*, 11 Paige, 414; *Merritt* v. *Harris*, 102 Mass., 326.) No benefit, therefore, can result to the plaintiffs under the circumstances of this case from a re-examination of the point which was considered and decided in the case of *Post* v. *Weil* (*supra*).

If the controversy were wholly dependent upon the effect of the condition reserved in the deed to Mark, the action would be incapable of being maintained, for as the defendant had the right to an indisputable title he would not be obliged to accept one incumbered by this condition. For "a court of equity will not now compel a purchaser to accept a title which is so doubtful that it may expose him to litigation, though the court may believe it to be good. * * * If, therefore, there be a reasonable chance that some third person may raise a question against the owner of the estate after the completion of the contract, the court will not compel him to accept it." (*Richmond* v. *Gray*, 3 Allen, 25, 27; *Christian* v. *Cabelt*, 22 Grat., 82, 103; *Garnett* v. *Macon*, 6 Call, 368; *Emery* v. *Grocock*, 6 Madd., 54; *Smith* v. *Death*, 5 id., 371; *Lowes* v. *Lush*, 14 Ves., 547; *Shriver* v. *Shriver*, 86 N. Y., 575; *Lockman* v. *Reilley*, 29 Hun, 434.) But to subject the case to the operation of this principle, there must be some rational doubt concerning the validity of the title; and where a court of justice upon the evidence would be warranted in directing a verdict in favor of the title, then no such doubt can be entertained. (*Shriver* v. *Shriver*, *supra*, 584, 585.) A mere possibility that the purchaser may be disturbed on account of some alleged defect of title is not sufficient to justify him in refusing to accept and receive the title. (*Hayes* v. *Harmony Grove Cemetery*, 108 Mass., 400.) And that in reality was all there was in this case supporting the objection

taken on behalf of the defendant to the title proposed, to be con-
veyed.   For as matter of fact it had been proved before the master
in the partition suit, by the production of the deed to Mark, that
the condition had been released by a release indorsed upon it and
executed by the grantors in December, 1816.   And the witness
Butler, who was a solicitor in the proceeding, was capable of prov-
ing as a matter of fact the existence of this release.   Under these
circumstances there was not the least probability that either Hogan
or his heirs would at any time institute proceedings for the recovery
of the possession of this property; or any portion of it which might
be devoted to a use prohibited by this condition.

It is true that the judgment in the partition case would not be
evidence against Hogan or his heirs of the existence of the release,
for they were neither of them parties to that action.   (Whart. on
Ev., §§ 760-762, and cases there cited.)   But as the release had
been produced and proved in that action, and its existence and con-
tents were known to the solicitor who was a living witness capable
of proving both, the fact appeared that such a release of this con-
dition had been made and executed.   Under the evidence as it was
produced upon the trial the court would be justified, and indeed it
would be its duty, to order a verdict in favor of the title, if that
should be drawn in question, because of the failure to observe the
terms of this condition.   The fact of the existence of the instru-
ment was so satisfactorily indicated as to render it to the last degree
improbable that any person would attempt to deprive the purchaser
of this property of his title, in case of a failure to observe the terms
of the condition.   It was also probable, as there was no evidence
of the destruction of the deed or the release, that it might ulti-
mately be found, and the record itself in that manner be rendered
entirely complete by exhibiting a perfect record title to the prop-
erty in the grantors.   And that circumstance decidedly added to
the strong improbability that the defendant could incur any possi-
ble risk in accepting the title proposed to be given to him.   This
probability as a matter of fact was verified by the discovery of the
deed and release upon it in the month of January, 1875, which was
previous to the commencement of the trial of this action.   The
release proved to be what it had been stated previously to be by the
solicitor and by the master in his report in the partition case.   It

was a release complete and effectual from all the grantors in the deed discharging the condition reserved, and it conclusively establishes the fact indicated by the master's report, and stated by the witness Butler, that the condition had been released and that the plaintiffs at the time when the deed was tendered by them to the defendant had, as a matter of fact, an indisputable title to the property proposed to be conveyed to the defendant. It is true that this ultimate discovery of the release can be allowed to have no effect upon the defendant's conduct in refusing to accept the title to the property, but upon the evidence presented and offered to him at the time of his refusal, it was entirely clear that there was no probability whatever that any proceedings would at any time be taken against him, or his grantees, for the recovery of the possession of any part of this property on account of a breach of the condition reserved in the deed to Mark. The strong moral certainty was that neither he nor they would be molested or disturbed in any respect, because of the creation of this condition. It was barely possible, but not probable, that the heirs of Hogan might institute proceedings to recover the estate, or so much of it as might be devoted to the business forbidden by the condition. But in view of the facts that the release itself had been produced and established in the partition proceedings, and that its existence was known to the solicitor, and that such a proceeding would, therefore, be extremely fraudulent and dishonest, it cannot be supposed that either Hogan himself, if living, or his heirs in case of his decease, would attempt to institute or carry on so nefarious an action. At the most there was but a bare possibility that the title would ever be questioned, and that, under the authorities, was not sufficient to protect the purchaser in refusing to receive it. It is not necessary, therefore, to examine the other points which have been presented in support of the appeal. The evidence as to the existence of the release should have been considered entirely satisfactory, and the defendant should have accepted the title proposed to be given to him. Upon the facts as they have been proved the plaintiffs were entitled to have the contract specifically carried into effect. The other purchasers of lots forming portions of the twenty-one acres contained in the deed to Mark have necessarily come in under the judgment in partition, and are concluded by the result of that action. They consequently could not insist in

any form on the observance of the condition, shown by the deduction of title to their grantors to have been released. The title offered to the defendant was, as a matter of fact, indisputable when the corrected deed was tendered to him. And the judgment should, therefore, be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, with costs to abide the event.