EDWARD BARLEYCORN, Plaintiff, *v.* JAMES WOOLLEY et al., Defendants.

(Supreme Court, Bronx Special Term, November, 1919.)

Title — unmarketable — sale in foreclosure — motions and orders — parties — jurisdiction — when defective order of publication cannot be cured nunc pro tunc.

> A jurisdictional defect cannot be cured by the entry of an order *nunc pro tunc.*
>
> In a foreclosure action the plaintiff obtained an order of publication against certain persons but not against the heirs, if any, of one who had died intestate seized of an undivided interest in the mortgaged premises, and the publication was in fact against, *inter alios,* the heirs, if any, of said intestate. *Held,* that said heirs, if any, not having been made parties defendant, the order of publication was defective; that such defect was jurisdictional and was not cured by an order *nunc pro tunc* obtained after the sale amending the order of publication by including therein a direction for publication against the heirs, if any, of said intestate.
>
> The title being in doubt was unmarketable and the purchaser at the sale in foreclosure should not be compelled to take title and his motion for the return of his payment on account and for reimbursement of his expenses will be granted.

MOTION to compel the purchaser at a foreclosure sale to complete his purchase.

Hatch & Clute, for plaintiff.

Thomas C. Patterson, for defendants.

MULLAN, J.   The plaintiff, the foreclosing mortgagee of realty, moves to compel the purchaser at the foreclosure sale to complete his purchase, and the purchaser contends that the title is not marketable and asks for the return of his payment on account and for reimbursement of his expenses.   The claimed defect relates to the attempt to bring in as parties defendant the successors in interest, whoever they may be, of James Woolley, who died on February 6, 1918, in Brooklyn, New York city, intestate, seized of an undivided interest in the mortgaged premises.   The plaintiff had obtained, in right season, an order of publication against certain persons, but not against the heirs, if any, of James Woolley.   The publication itself was, however, against, *inter alios,* the heirs, if any, of James Woolley.   The cause went to judgment on April 25, 1919, and the sale was thereafter had in due course. After the sale an order was obtained amending, *nunc pro tunc,* the order of publication by including therein a direction for the publication against the heirs, if any, of James Woolley that had already been made. It is sufficient to say of the information contained in the papers in relation to the nearest blood of James Woolley living at the time of his death that no reasonable person could fairly deny that it was very possible, if not indeed probable, that he left a son capable of inheriting from him.   The plaintiff himself must have entertained the same doubt upon the subject, as is best evidenced by his obtaining the amendatory order referred to.   The plaintiff's contentions are, *first,* that the burden of proof is upon the purchaser to show that James Woolley left heirs him surviving, who are not made parties defendant; and, *second,* that if the rule be otherwise, the amendatory order cured the defect of the original order of publication.   His first

point is clearly untenable. *Shriver* v. *Shriver,* 86 N. Y. 575; *Toole* v. *Toole,* 112 id. 333; *Heller* v. *Cohen,* 154 id. 299. The title being in doubt, and thus unmarketable, the purchaser should not be compelled to accept it (same cases). The rule of those cases is not weakened or called into question by the holdings in *Ruff* v. *Gerhardt,* 73 App. Div. 245, and *Greenblatt* v. *Hermann,* 144 N. Y. 13, upon which plaintiff relies. These latter cases merely restate the very old rule (see *Shriver* v. *Shriver,* 583 *et seq.*) that a title is not to be impugned by mere conjecture, suspicion or theoretical possibility, unsupported by any evidence capable of creating a rational doubt. I think it is equally plain that the defect was not curable by the amendatory order. Passing other considerations, such as the failure to give notice of the application for the order to the persons entitled to notice, if any there were, a *nunc pro tunc* order can never cure a jurisdictional defect. This has often been said (see, for example, *Conklin* v. *Federal Trust Co.,* 176 App. Div. 572), but the holding in *Mishkind-Feinberg Realty Co.* v. *Sidorsky,* 189 N. Y. 402, seems to have been somewhat generally, though improperly, accepted as a construction of section 723 of the Code of Civil Procedure, permitting the correction of defects that even go to the jurisdiction. It may not be easy concisely to phrase a satisfactory explanation of just why the defect dealt with in the *Mishkind* case was not a jurisdictional defect, and I shall not attempt to do so, but the defect there was treated as " unimportant and unessential " (p. 406) and " unimportant and unsubstantial " (p. 408); and, although the inquiry was not in terms described as one having to do with the question of whether or not the defect went to the jurisdiction, I must assume that the holding was not that a jurisdictional defect can be

cured, but that the defect there in question was not jurisdictional. Can it be argued seriously that the defect here does not go to the jurisdiction? To do so is to contend that after you get a judgment against a man you may make him a party to a litigation that has already resulted in the taking away of his property. Let us suppose that a summons is published against an existing person, that it was in all respects a proper case for publication and that the person intended to be sued actually saw the publication and learned upon inquiry that no order had been made authorizing the publication. It seems to me to be too clear for argument that he could safely ignore the apparent summons that was in fact and law no summons at all and that a *nunc pro tunc* order would no more confer jurisdiction over him than would an ordinary summons personally served on him after judgment. And if an intended defendant who sees such an unauthorized publication is not affected by it or a *nunc pro tunc* order based upon it, does it now follow, *a fortiori,* that such proceedings do not bring in or bind those possible persons concerning whom it is not even known whether they exist? I purposely avoid reference to minor and more technical considerations, as it would serve no purpose to discuss them when it is so evident that one of the defects we are here dealing with is clearly jurisdictional in its nature. The motion of the plaintiff is denied, with ten dollars costs, and the motion of the purchaser is granted, with ten dollars costs.

Ordered accordingly.