## SUPREME COURT.

CHARLES SCHULTZ, as executor, &c., agt. JOSEPH ROSE.

*Specific performance of contract for sale of land—When it will not be decreed—*
*Title by adverse possession.*

In an action by a vendor for a specific performance of a contract for the purchase of land, it appeared that for a portion of the premises the vendor and those through whom he claimed had no title by deed, but that their title and ownership rested upon adverse possession only: .

*Held,* that the vendee was not bound to accept such title, or in equity to fulfill the contract.

Also, that if the title, on close scrutiny, is not free from reasonable doubt and flaws, which indicate probable danger, sufficient to caution a prudent man against hostile claims of others, specific performance will not be decreed.

Also, that a purchaser will not be obliged to take a title which depends upon a matter of fact which is not capable of satisfactory proof, or if capable of proof yet is not so proved; and if after the vendor has produced all the proof he can, a reasonable doubt still remains, the title is not marketable, and the purchaser is not bound to take it.

*Special Term, April,* 1883.

ACTION for specific performance.

*B. A. Carpenter,* for plaintiff.

*Edward F. Hassey,* for defendant.

VAN VORST, *J.* — This is an action brought by the executor of Charlotte Cohn, deceased, to compel the specific performance on the part of the vendee, the defendant, of a contract for the purchase of the house and lot of land known as 337 East Eighth street, in the city of New York. Numerous objections were urged by the defendant's counsel at the trial to the title to the premises in question. Several of them are quite unimportant, and may be at once dismissed. Among the objections, however, which are urged are several which demand serious attention, and an examination of these leads

to a conclusion fatal to the plaintiff's demand for a specific performance of the contract of purchase.

To refuse a specific performance of a contract for the purchase of real property, it is not incumbent on the court to judicially determine that there is such inherent defect in the title as that it cannot in the end be cured. It is sufficient to justify the court in withholding this peculiar relief that upon close scrutiny the title seems doubtful; that it discloses apparent flaws which indicate possible or probable danger sufficient in character to caution a man of reasonable prudence against claims and rights adverse to those of the vendor. The defects, however, must have a substantial basis. The purchaser is justified in demanding a title upon which he may reasonably rest secure without apprehension from hostile claims of others, which the state of the record and muniment of title give good reason to fear may at some time be interposed.

Three objections are raised by the defendant which render the title at least doubtful. In the order of time they are as follows:

*First.* In the year 1829, one Charles F. Dinnies conveyed the premises in question to Thomas G. Talmage, Lewis Van Pelt and Henry Miller. By its terms the conveyance was absolute on its face, and it passed the estate in fee to the grantees, charged with no trust, and fettered with no conditions.

Two years later Thomas G. Talmage and Lewis Van Pelt, two of the grantees in the last mentioned conveyance, executed a deed of the premises to one Joseph B. Beekman. This deed was placed on record, and is a link in the chain that sustains the seizin of the plaintiff's testator. This deed contains several recitals, to the effect that the preceding deed from Dinnies to Talmage and others was in the nature of a mortgage, and had been made at the request of Beekman, to whom the land really belonged, to secure an indebtedness from him to Talmage, Van Pelt and Miller as copartners, and that Miller had died, leaving Talmage and Van Pelt surviving; that such arrangement and disposition of the debt due to

Schultz agt. Rose.

Talmage, Van Pelt and Miller from him had been made; that it was proper that the collateral security for its payment should be relinquished and given up. Hence the conveyance to Beekman by Talmage and Van Pelt. As a matter of fact, it appears that the grantee Miller had died prior to the date of the conveyance from Talmage and Van Pelt to Beekman.

Although the grantees Talmage, Van Pelt and Miller may have been in fact copartners, and how that is I cannot tell, yet the conveyance to them was as tenants in common by an absolute title. At the death of Miller, therefore, his children became seized as tenants in common of an undivided one-third part of the premises in question, subject to their mother's right of dower. Their rights have never been divested, as appears by the record, although ousted from possession by the act of their cotenants, Talmage and Van Pelt.

These persons are not estopped by the recitals in the deed from Talmage and Van Pelt to Beekman, to which they were not parties.

These recitals may or may not be true. These recitals bind only the parties to the instrument, the grantors and grantees, and the rights of others are wholly unaffected thereby. A judicial determination of the rights of the respective parties to the premises in question, in a proceeding in which the heirs-at-law of Miller were properly represented, could alone bind them, or divest them of whatever estate they apparently had in the premises while they remained infants, and subsequent to their attaining their majority a release would be requisite to free the title of their interest.

Had the conveyance to Talmage, Van Pelt and Miller been to them as copartners, and had it appeared on the face of the deed that the conveyance was made as security only for a debt due the firm, it may be that the surviving partners might have reconveyed on being paid their debt. But it is not necessary to decide that.

The possession of one joint tenant is the possession of all, and until the actual ousting of the heirs-at-law of Miller, by

the conveyance made by Talmage and Van Pelt and the delivery of the premises to Beekman, a title by adverse possession could not begin.   This deed bears date in 1831.

The ages of the children of Miller at the time of his death does not appear, and no light is thrown upon their subsequent career.   Where all things are unknown, who can say that anything is improbable ?

Though the period of time be long—fifty-two years—it is still hard to say that the rights of all the children of Miller, or their heirs, have been destroyed by a continuous hostile and adverse possession of twenty years.   The question is one of fact and its solution must be doubtful, and a purchaser should not be compelled to take a title in respect to which such a doubt exists.

He is entitled to a title free from reasonable doubt, and such as is, without question, marketable.   And this leads to the consideration of the second and third objections raised by defendant to the goodness of the title in question.

In the year 1839, one Titus, who had succeeded to the estate of Beekman, conveyed the premises in question to Gerard Crane and five others, as tenants in common.   By virtue of several *mesne* conveyances, Gerard Crane became the owner, as the record shows, of nineteen twenty-fourths of the premises in question.   There is no evidence to show that he ever claimed a title to the remainder of the premises.

It does not appear that Titus and Angenine, two of the cotenants with Gerard Crane, ever parted with their interest in the property.   In 1859 Gerard Crane, by a full covenant deed, conveyed the premises to the husband of Charlotte Cohn, and during her life, by proper conveyances, she became seized of the premises as they were conveyed to her husband. The plaintiff, as executor of and under her will, made the sale to the defendant which is sought to be enforced herein.

And yet this hiatus in the chain of title, owing to the outstanding and unextinguished interest of Angenine and Titus, the plaintiff asks to bridge by a claim of adverse possession.

Schultz agt. Rose.

To compel a purchaser to accept a title founded exclusively upon adverse possession, unless the facts of the case were clear and free from all reasonable doubt, would assuredly be an abuse of the powers of a court of equity. A decision of this court in an action for specific performance can heal no inherent weakness or restore a broken link in the chain of title, unless the facts and parties, essential and affected, are before it, and in a relation and condition to be dealt with.

Experience shows that titles founded upon an adverse possession exclusively are subject to be disturbed by claims arising from quarters often unexpected, and which it was supposed, or hoped, had been effectually cut off by lapse of time, the assertion of which, however, was delayed by conditions and disabilities which the law created and favored.

Titus and Angenine were tenants in common with Gerard Crane. That being the case, his possession was their possession; and unless by acts open and notorious, and to which their attention severally was personally directed, that he laid claim to the entire possession in hostility to their rights, a title by adverse possession, antagonistic to (and superior to) the record title, did not begin to run until the deed from Crane to Cohn in 1859 (87 *N. Y.*, 348).

No evidence has been adduced to show that this was the case, or that there are no claimants under Titus and Angenine who may not, in the future, assert a valid claim to a portion of this property, and who have not been heretofore hindered in some way from asserting the same by some lawful disability.

The burden rested upon the plaintiff to show that he had a good title ( *Wilson* agt. *Holden*, 16 *Abb. R.*, 133).

A purchaser at a judicial sale even has a right to expect that he will acquire a good title, and he will not be compelled to accept a deed when the title is doubtful and a claim to the property exists in favor of persons who are not parties to the action which might impair the value of the real estate by casting a cloud over the title or by subjecting the purchaser

Schultz agt. Rose.

to the risk of a contest at law (*Argull* agt. *Raynor*, 20 *Hun*, 267).

A purchaser will not be compelled to complete the purchase where there is some reasonable ground of evidence shown in support of an objection to the title, or where the title depends upon a matter of fact which is not capable of satisfactory proof, or, if capable of proof, yet it is not so proved; and if, after the vender has produced all the proof he can, a reasonable doubt still remains, the title is not marketable and the purchaser is not bound to take it (*Shriver* agt. *Shriver*, 86 *N. Y.*, 575; *Mott* agt. *Mott*, 68 *N. Y.*, 258).

And with regard to the subject of adverse possession, ALLEN, *J.*, in *Hartley* agt. *James* (50 *N. Y.*, 42) says: "The defendants had no paper title, or such paper title as was sufficient in law, and the plaintiff was not bound to accept a title resting upon adverse possession, had such a title been shown."

To justify a decree in favor of plaintiff in a case like the present there should be a moral certainty that the purchaser will receive a good title.

It may be that the doubts arising in this case may all be dispelled by proof, and that the plaintiff has in fact a good title, and upon that I shall cast no unnecessary cloud, but the defendant shall not be compelled to assume the risk. The risk should remain where it is—upon the plaintiff.

The result reached is that the court is not justified in authorizing a decree for specific performance, and there must be judgment in favor of the defendant, dismissing the complaint with costs, and an affirmative judgment in favor of defendant for the recovery of the ten per cent paid by him on the purchase, with the auctioneer's fees on the executor's sale and his expenses incurred in the examination of the title. Findings of fact and conclusions of law shall be prepared by defendant and a copy served on plaintiff's attorney, with notice of settlement of five days.