By the Court.
Freedman, J. —
The judgment appealed from, directs the specific performance by the defendant of a contract made between him and the plaintiffs, for the sale by them, and purchase by him, of certain real estate in the city of New York.
The defendant was ready and able to perform the contract on his part, but refused to take title on the ground that the plaintiffs, by a deed of the premises exe cuted by them alone, which was the only deed tendered by them, could not convey to him a marketable title.
His objection to the title rests upon admitted facts in the chain of title.
It appears that in June, 1835, plaintiffs’ testator was seized of the premises in question, and in that month conveyed them to one Daniel E. Delavan, by deed, recorded on June 29, 1835. Said Delavan gave back a purchase money mortgage to said testator, to secure part of the purchase money, which was also recorded on the same day. Delavan, the grantee, conveyed the mortgaged premises to one Walter J. Smith, in trust for the benefit of certain creditors therein named, by deed dated May 16, 1840, acknowledged by grantor on May 19, 1840, and recorded on June 6, 1840. Said Smith has never made any conveyance of said premises. Kip, the mortgagee, commenced an action in the court of chancery, to foreclose the said mortgage made to him by Delavan, and the same proceeded to a judgment of foreclosure and sale by master, at which sale said mortgagee was the purchaser, and the master’s deed was executed to him, dated December 30, 1840, recorded February 23, 1841. Smith was not made a party to this foreclosure suit, but Delavan was. The bill and notice of pendency of action were filed on May 30, 1840, after the date and acknowledgment of the Smith deed, but before that instrument was recorded, which recording took place on- June 6, 1840 ; but the sub *7 poena was not issued until August 5, 1840, for service upon Delavan, and was not served upon him until August 15, 1840. Kip never took possession of the premises, and they remained vacant and unoccupied, and without fence or enclosure, until after his death, which took place in 1863. He left a will appointing the plaintiffs his executors, to whom letters were issued in 1863. He devised his residuary real and personal estate to said executors, in trust to lease his productive real and leasehold estates, and collect and pay the net income thereof to his wife for life, and upon her decease to divide said residuary real and personal estate among his children, with a further provision that they might sell all his vacant and unproductive lots within the state of New York, and divide the proceeds of such sale, when made, among his children. The executors did not take possession of the premises in question, and they remained vacant and unproductive, and unenclosed, for some years after the testator’s death. On April 15, 1867, plaintiffs executed a lease to one John J. Reeber of four lots of land on the east side of Fourth avenue, “ fifty feet and five inches from the north-easterly corner of One Hundred and Twenty-first street and Fourth avenue.” This description does not cover the premises in question. They should have been described as situated on the easterly side of Fourth avenue, distant “ fifty feet five inches from the south-easterly corner of One Hundred and Twenty-first street and Fourth avenue.” The misdescription was, as is claimed, the result of a clerical error in the drawing of the instrument. At any rate, Reeber, under and by virtue of the lease, took possession of the premises in suit, and at once enclosed them on all four sides with a substantial board fence four feet high. The lease was for nine months only, and it never was renewed, nor was any rent paid after the term demised had ended, but Reeber continued to occupy, and to keep enclosed the said' premises as a lumber-yard, and, as the plaintiffs claim, held over as their lessee in possession, down to about two *8 years ago, when he gave up his business to his sons, who have since occupied the lots.
Upon these facts it was held at the trial that the testator did not, at the time of his death, own the real estate in' question, and that, as he was not such- owner, the executors could not convey by virtue of any expressed power of sale in the will, because such power referred only to land of which the testator was the owner at the time of his death.' It was held that the interest of the testator in respect of the premises in suit was personal property, viz., the mortgage, and Delavan’s rights under the assignment for the benefit of creditors, and that the executors took such personal property in trust for the purposes described in the will. The trial then seems to have proceeded, and judgment for the plaintiffs seems to have been given, upon the theory that the will by implication conferred all the powers necessary to a performance of the duties of the trust; that taking possession of the premises, under the foreclosure proceedings and master’s deed, was a legal exercise of enforcing the mortgage in one way ; that, in the course of time, Smith’s right of redemption was cut off by the statute of limitations ; and that thereupon the executors, as trustees, became the owners of the laird by operation of law, and' invested with an implied power to sell.
On the appeal before us it was substantially conceded that the failure to make Smith a party defendant in the foreclosure action, left his interest in the premises outstanding and unaffected. It was claimed, however, that his interest is only a right to bring an action to redeem the premises from the mortgage; that such right has been barred by statute ; and that, by reason thereof, the title of the plaintiffs, as mortgagees in possession, became so perfect by adverse possession, that a court of equity will compel a purchaser to take it.
In order to properly test this claim, it is well to consider, at the outset, whether a court of equity will, in an action for the specific performance of a contract calling *9 for a good title, compel a purchaser to take a title resting upon adverse possession, and if so, under what circumstances he will be compelled.
An examination of the cases cited by the learned counsel for the respondents discloses that, while it has been said on several occasions that a purchaser may be compelled to take such a title, there is not a single case among them in which he was actually compelled to do so. The cases of Cahill v. Palmer, 45 N. Y. 478 ; Swettenham v. Leary, 18 Hun, 284; and Bicknell v. Comstock, 113 U. S. 149, were not cases for specific performance, and they amount only to a reiteration of the general rule which no one disputes, that clear adverse possession for the time prescribed by statute establishes a title.
Hellreigel v. Manning, 97 N. Y. 56, was not a case of adverse possession, but of apparent defect in the record title, and the proof established beyond reasonable doubt that the defect was the result of a mistake and that the title was in fact perfectly good.
In Seymour v. De Lancey, Hopk. Ch. 436, the Chancellor, it is true, said that “if the possession of William Seymour had been clearly adverse for 25 years, his title would not, I think, be sufficiently impeached, either by the slight proof that Henry E. Lutterloh may have been an alien, or if he was a citizen, by the mere contingency that his title may have resided, since his death, in persons disabled to assert their rights.” But as he had previously said, that there was not proof enough of an adverse possession, the remark quoted was held obiter in Shriver v. Shriver, 86 N. Y. 575 (584).
So in the case last referred to, Folger, Oh. J., in delivering the opinion of the court óf appeals, starts with the proposition that a clear adverse possession for the time prescribed by statute makes a title which a purchaser at a judicial sale may not ■ refuse. He then concedes that “ though there may have been possession thus characterized for the requisite time, there may also be circumstances that will prevent it becoming adverse.” *10 And finally lie concludes to affirm the order relieving the purchaser at a sale under the judgment from his purchase, on the ground that “the vendee has brought such facts and circumstances as call upon the vendors to show how they may be met and nullified before they can compel him to complete his purchase.”
On the other hand, an examination of the cases cited by the learned counsel for the appellant, shows that, in delivering the unanimous opinion of the court of appeals in Hartley v. James, 50 N. Y. 38, Allen, J., said (p. 42) :
“... It is very evident that to a strip of land twelve feet in width, traversing diagonally the contracted premises, and being a part of the premises agreed to be conveyed, the defendants had no paper title, or such a paper title as was sufficient in the law, and the plaintiff was not bound to accept a title resting upon adverse possession, had such title been shown.” This statement is important because it occurs in a case in which the action was brought to recover a payment made on account of the contract of purchase and the expenses incurred, on the ground that the defendants could not make a good title to the premises, and in which the claim by adverse possession was pressed before the court, as appears from the points raised by defendants’ counsel, and because in such a case the burden resting upon the purchaser is much greater than in an action against him .for specific performance. The difference is as follows : In an action for specific performance equity will not compel a reluctant purchaser to take a doubtful title. If the doubt of the sufficiency of the title is reasonable and practical, the court, in its discretion, will excuse performance by the purchaser. In an action at law, to recover back a deposit, the complaining purchaser must satisfy the court that the title is absolutely bad, and before he can succeed, the court must so decide. Here a merely doubtful title will not be sufficient.
So, in Schultz v. Rose, 65 How. Pr. 75, which was an action against a purchaser for specific performance, the *11 dismissal of the complaint was accompanied by the following remarks, made by Yah Yorst, J., in the course of a well-considered opinion, viz: “To compel a purchaser to accept a title founded exclusively upon adverse possession, unless the facts of the case were clear and free from all reasonable doubt, would assuredly be an abuse of the powers of a court of equity. A decision of this court in an action for specific performance can heal no inherent weakness or restore no broken link in the chain of title, unless the facts and parties, essential and affected, are before it, and in a relation and condition to be dealt with. Experience shows that titles founded upon adverse possession exclusively are subject to be disturbed by claims arising from quarters often unexpected, and which it was supposed, or hoped, had been effectually cut off by lapse of time, the assertion of which, however, was delayed by conditions and disabilities which the law created and favored.”
Other cases might be referred to, but from the foregoing it already sufficiently appears that in this state the weight of judicial opinion is that, before a purchaser will be compelled, in an action for specific performance, to accept a title resting upon adverse possession, such title as a whole must be free from reasonable doubt, and that if there be any doubt which is practical, the vendor must show that it is capable of being dispelled by competent evidence within easy reach. And such is in substance the weight of judicial opinion in other states and in England. .
An application of the rule to the facts of the case at bar, produces the following result, viz : While the premises remained vacant and unenclosed, the statute of limitations did not run against Smith and those he represented, or who may claim through or under him. Eeeber was in possession of the lots for about two years prior to 1867, but, as he testifies, and as plaintiffs concede, under no claim of title. His possession under plaintiff’s lease began in that year, and therefore about eighteen years *12 ago. This, assuming that his possession was, and continued to be, plaintiffs’ possession, and that, as against Smith ánd those he represented, or who might claim through or under him, it constituted adverse possession, does not, of itself, confer a good title upon the plaintiffs, because in such a case the statute requires twenty years uninterrupted possession, adverse to the title of the record owner.
The plaintiffs are thus compelled to fall back upon such possession as they took in fact under the relations which existed between them and Smith by reason of the defective foreclosure, and then to rely upon the claim that, under the law as it stood prior to the passage in 1877 of section 879 of the Code of Civil Procedure, and as it was construed in Miner v. Beekman (50 N. Y. 887), and Hubbell v. Sibley (50 Ib. 468), any action which might have been brought by Smith or those he represented, or by any one claiming through or under him, was barred because not brought within ten years from the time they took possession.
Taking then into account such existing relations, we must proceed upon the theory that the mortgage, so far as it remained unforeclosed as against the owner of the equity of redemption, remained an asset of the estate of plaintiffs’ testator, and as such, came to the plaintiffs as executors, and that, as executors, the plaintiffs had the right to take possession of the mortgaged premises as one method of enforcing the mortgage. This view must regard the land as personalty in the hands of the executors. We then encounter the following difficulties, viz :
First. By the terms of the mortgage, it became due on June 24, 1836. No payments are shown to have been made upon it; but if we take the master’s deed to Kip, with a consideration of $1,000, and assume that that amount was credited upon the mortgage debt as of the date of that deed, December 30, 1840, we still find that more than twenty-six years elapsed after that before the lease to Beeber was given, and more than twenty-two *13 years elapsed before the mortgagee’s death, during which time he took and had no possession of the premises. The presumption from lapse of time is then, that this mortgage was paid, and upon Kip’s death it was no asset in his executors’ hands, and they could do nothing under it without rebutting that presumption, which they have not attempted to do. In none of the cases cited by plaintiffs did the mortgagee take possession after twenty years from the time the mortgage debt became due.
Second. On the other hand, if there were no such presumptions, then the plaintiffs, by entering into and continuing in possession to enforce the payment of the mortgage, entered into and continued in possession avowedly as mortgagees, and in such a case the statute would not run while they so held, for the reason that while a mortgage continues to be recognized by the holder as a mortgage, it is a continuing right of the owner to pay it off and discharge it, and, by so doing, regain the possession of the land. In such a case the possession by the mortgagee is not adverse (Miner v. Beekman, 50 N. Y. 337).
The statute runs only from the time of the entry of the mortgagee, under claim of exclusive title (Hubbell v. Sibley, 50 N. Y. 468).
The plaintiffs are thus driven back to the position that they took possession, not as mortgagees, but as owners claiming the exclusive title. This claim was held untenable by the court at special term, and it certainly finds no support in the provisions of the will. The property in suit, at the time of taking possession, consisted of vacant lots, and no interest whatever in vacant lands was devised to the plaintiffs by the will. All the testator’s vacant land descended to his children, subject to the power of sale. Plaintiffs could not change the whole course of descent by their own act, for if they could, by leasing, make vacant and unproductive property productive property, they could convert what would otherwise descend to the children in fee subject to their power of sale, into *14 property which they could insist upon holding in trust for the benefit of the widow during her life. They therefore had no authority to make the lease to Reeber.
The consequence of all this is that, to say the least, it is doubtful whether the plaintiffs, in view of their limited powers under the will and under the peculiar circumstances of this case, ever took such a possession of the lots in question as was necessary to set running, as against Smith and his representatives, that provision of the statute which limited the time for the commencement of an action to redeem to ten years. Moreover, there may have been disabilities which suspended the running of the statute, if it ever commenced to run.
In addition to what has already been said, the question still remains whether the plaintiffs, though they had no express power under the will to make the contract in question with the defendant in this case, had implied power to do so. This question is also involved in doubt, for if the property is personalty, it may be that under the provisions of the will it cannot be 'sold during the fife of the widow, who is still alive. But in view of the doubts already expressed, I do not deem it necessary to determine it.
Upon the whole case it sufficiently appears that the title offered by the plaintiffs is not so free from reasonable doubt that the defendant should in equity be compelled to accept and pay for it. For a period of forty-five years from the record of the deed from Belavan to Smith, there is no deed or instrument of record conveying, describing or even mentioning the premises. The title offered rests largely upon parol evidence, and upon the assumed bar of the statute of hmitations. The parol evidence consists in the main of Reeber’s testimony, who is now over eighty years of age, in connection with a lease which the plaintiffs had no power to make, which does not truly describe the premises, and is not recorded, and which, if recorded, owing to the misdescription, would not be returned upon an official search in the register’s *15 office against the premises in question. There clearly was no strictly adverse possession for twenty years, and from the facts, so far as they do appear, it remains extremely doubtful whether the statute of limitations even commenced to run as a bar to an action to redeem. Moreover, the nice and complicated question of implied power arising under the will in various forms, and upon which so much, if not all, depends, remains involved in doubt. ' All these things taken together show that the title is not a marketable one. The burden rests upon the plaintiffs to show that their title is so free from reasonable doubt as to be marketable, and the plaintiffs having failed to give the necessary proof, the defendant should not be compelled to take the title (Shriver v. Shriver, 86 N. Y. 575 ; Mott v. Mott, 68 Ib. 246 ; Schultz v. Rose, 65 How. Pr. 75).
The judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.
Van Vorst, J., concurred.